ST. LOUIS LITTLE ROCK HOSPITAL,
INC. d/b/a Compton Hills Medical
Center, Relator,

v.

Honorable Gary M. GAERTNER, Judge
of Division No. 1 of the Circuit Court,
St. Louis City, Missouri, Respondent.

No. 48899.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 27, 1984.

James J. Amelung, St. Louis, for relator.

David R. Swimmer, Clayton, for respondent.

GAERTNER, Judge.

Mandamus Relator St. Louis-Little Rock Hospital, Inc., d.b.a. Compton Hills Medical Center, is a defendant in a wrongful death

action entitled *McCellan v. St. Louis-Little Rock Hospital, Inc.*, which is pending in the Circuit Court of the City of St. Louis and over which respondent, a judge of that court, has presided. Our preliminary writ of mandamus is made absolute.

Plaintiffs in the underlying action seek to recover for the allegedly wrongful death of their decedent, who committed suicide by drinking a bottle of toilet bowl cleanser while she was under relator's care for treatment of her alcohol abuse, chemical dependency and depression. Relator's alleged negligence consists primarily of an alleged failure to provide adequate supervision and monitoring of the decedent when relator knew or should have known that she was severely depressed and suicidal, and in leaving a bottle of toilet bowl cleanser in her room.

On March 9, 1984, plaintiffs served a request for production on relator and other defendants. Relator objected to a number of the requests on April 4, 1984, but respondent overruled these objections on June 21, 1984. After respondent denied relator's motion to set aside this order, relator applied to us for a writ of mandamus contending that respondent was without jurisdiction and abused his discretion in overruling relator's objections to plaintiffs' requests for production 4 and 7:

4. That complete contents of all investigations made by Defendants concerning decedent or circumstances of her death from November 19, 1982 until the filing of Plaintiffs' Petition.

\* \* \* \* \* \*

7. That complete contents of all documentation of suicides, reported suicides, accidental deaths, attempted suicides or threatened suicides within five (5) years prior to November 19, 1982.

The first issue is whether mandamus will lie to review a trial court's refusal to sustain objections to discovery which are based upon work product or privilege. Respondent contends that no authority exists for use of mandamus in the present case and that, under the present circumstances, it is a "guerilla" substitute for direct appeal which will sabotage orderly appellate procedure.

 Mandamus will lie to review a trial court's sustention of objections to discovery because the refusal to permit discovery of matters which are relevant to the lawsuit and reasonably calculated to lead to admissible evidence and which are neither work product nor privileged is an abuse of discretion. *State ex rel. Hudson v. Ginn*, 374 S.W.2d 34 (Mo. banc 1964). The converse, the refusal to forbid discovery of matters which are privileged or work product, is an act outside the court's jurisdiction and an abuse of discretion. *See State ex rel. Mueller v. Dixon*, 456 S.W.2d 594, 598–599 (Mo.App.1970). Thus, mandamus will also be available to review a trial court's overruling objections to discovery on the grounds that the matters sought are privileged or constitute work product.

Moreover, prohibition has long been available to prevent a trial court from abusing its discretion by ordering discovery of privileged matters or of work product. *State ex rel. Gonzenbach v. Eberwein*, 655 S.W.2d 794, 795 (Mo.App.1983); *See State ex rel. Mueller v. Dixon, supra.* The distinction between mandamus and prohibition is at best blurred, at worst nonexistent, and the subject matter to which the two writs apply overlap to a great extent. *See* Tuchler, "Discretionary Interlocutory Review in Missouri: Judicial Abuse of the Writ?" 40 Mo.L.Rev. 577, 586–87 (1975). Since prohibition would lie here, we see no reason to deny the applicability of mandamus. Under the circumstances of the present case, we will not engage in fine, anachronistic distinctions of nomenclature. We refuse to revert to the hypertechnical niceties of Common Law Pleading where the title of a pleading was of more importance than its content.

Finally, relator has no adequate remedy by direct appeal. If the matters sought to be discovered are protected from discovery by reason of privilege or work product, then disclosure to plaintiffs would violate the confidentiality essential to maintaining

a privilege, and no remedy by appeal could restore that confidentiality.

■ Respondent refused to stay his order which overruled relator's objections to the requests for production. The refusal to stay, however, does not mean that this court may not compel him to vacate his order, where prohibition is sought. "So long as anything remains to be done to carry a judgment into effect the writ may go, and it may take on such form as the exigencies of the situation may demand." *State ex rel. Buckingham Hotel Co. v. Kimmel,* 183 S.W. 651, 652 (Mo.App.1916). The same is true of mandamus. An inferior court may not so structure the posture of a case as to preclude review by a superior court. If the trial court stays its ruling, the extraordinary writ may issue against the entry of the order; if no stay is issued, the extraordinary writ may issue against the enforcement of the order.

■ Respondent also argues that relator has waived any objections to the requests for production because relator's objections were filed beyond the twenty days set forth in Rule 58.01(b). The argument is untenable. Plaintiffs' requests for production expressly granted relator forty-five days in which to respond and the objections were filed within the forty-five days. Plaintiffs are estopped to assert the twenty day requirement of the rule.

We turn now to the substance of the present case. Two issues are presented to us for determination: (1) Is the information sought by request number four, the complete contents of all investigations made by relator between the date of the incident and the filing of the petition, protected from discovery by the work product doctrine or by the attorney-client privilege; and (2) Is the information sought by request number seven, which includes medical files and incident reports on other patients, protected from discovery by the physician-patient privilege?

■ As to request number four, it is axiomatic that, under Missouri procedure, a party may not be required to produce the content of his pre-trial investigation in the absence of a showing of substantial need and undue hardship in obtaining equivalent information. Rule 56.01(b)(3). No such showing has been demonstrated by plaintiffs here. Based upon the form and scope of the request, relator's objection should have been sustained. However, although nothing of record leads to this conclusion, the parties in their respective briefs and in oral argument, seem to have agreed that this request is directed toward a single document, an incident report prepared by a nurse employed by relator. Because the parties have narrowed the issue to this one item, we will overlook the broad form of the request for production and direct our attention to the narrow issue addressed by the parties.

■ Documents prepared by an agent or employee at the direction of an employer for the purpose of obtaining an attorney's advice or for use in prospective or pending litigation fall within the attorney-client privilege. The seminal case in Missouri regarding pre-trial production of documents prepared by employees for the employer following an incident is *State ex rel. Terminal Railroad Association of St. Louis v. Flynn,* 363 Mo. 1065, 257 S.W.2d 69 (banc 1953).

"A statement concerning an accident obtained by an employer from his servant for the bona fide purpose of being later transmitted to the employer's attorney for advice, or to be used by the attorney in connection with pending or threatened litigation, is privileged, because it is part of the communication from the client to his counsel. The same is true of a statement by the accredited agent of a corporation, giving his account of an accident for use of counsel in pending or threatened litigation...."

*Id.* at 73, quoting 58 Am.Jur. 282, *Witnesses,* § 503.[1] *Accord, Martin v. Lingle Re-*

---

1. Rule 56.01(b)(3) has modified *State ex rel. Terminal Railroad Assn. v. Flynn, supra,* by

making work product discoverable upon a showing of substantial need for the materials

*frigeration Co.*, 260 S.W.2d 562, 566 (Mo. 1953); *Lindberg v. Safeway Stores, Inc.*, 525 S.W.2d 571, 572 (Mo.App.1975).

To constitute work product, materials must be prepared in anticipation of litigation. Rule 56.01(b)(3). Accordingly, we must look to the nature and purpose of the incident report in this case. Relator has attached as exhibits to its brief the *Compton Hills Medical Center Safety Manual*. The section thereof labelled "Incident/Accident Reporting System," provides for the preparation in triplicate of reports of all incidents. One copy is sent to the hospital administration, one to the head of the involved department, and one to the hospital's insurance company. It is significant to note that this third copy is sent to the insuror not immediately after the incident, but "on a monthly basis." The insurance company "feeds these reports into a computer and sends back to the hospital a computer printout." After review by the Incident Report Coordinator and the Safety Committee, the report forms the basis for corrective and preventive action. It is a further significance that the incident report form, although containing the name of the insurance company, is headed as follows:

# PATIENT INCIDENT REPORT
### NOT A NOTICE OF LOSS
### For Loss Prevention Purposes Only

The use served by these incident reports is obviously that of future loss prevention, an important and praiseworthy objective. But they are not documents prepared in anticipation of litigation so as to invoke application of the work product exception to discovery.

We turn next to the question of applicability of the attorney-client privilege. The "anticipation of litigation" requirement although determinative here of the work product question, has no application to the question of whether a communication falls within the scope of the attorney-client privilege. *Johnson v. Sullivan*, 23 Mo. 474, 479–481 (1856); *accord, Bussen v. Del Commune*, 239 Mo.App. 859, 199 S.W.2d 13, 21 (1947).

At the outset, we note that the fact that the incident report was communicated to relator's insuror rather than directly to relator's attorney does not preclude assertion by relator of the privilege. A communication falls within the attorney-client privilege even though the attorney was not yet actually representing the client, provided that the communication was made between the client as an insured to his liability insuror during the course of an existing insured-insuror relationship. *State ex rel. Cain v. Barker*, 540 S.W.2d 50 (Mo. banc 1976).

Nevertheless, relator's incident report does not fall within the scope of the attorney-client privilege. In order to be privileged, a communication between a client and his attorney, or between an insured and his insuror, must be within the context of the attorney-client relationship. *Bussen v. Del Commune, supra* 199 S.W.2d at 20; § 491.060(3), RSMo. 1978. In other words, the purpose of the communication must be to secure legal advice from the client's attorney. *See* McCormick on Evidence, § 88 (3d ed. 1984). The purpose of the incident report was not to enable relator or its insuror to obtain legal advice, but rather to help relator reduce the number of accidents at its facility. The incident report form called for the nurse to fill in answers coded so that a computer

and an inability to obtain a substantial equivalent of the materials. *Porter v. Gottschall*, 615

S.W.2d 63, 65 (Mo. banc 1981).

would be able to read the responses. There is no indication that the coded responses were decipherable by relator's attorneys or that an incident report ever found its way into an attorney's hands. Moreover, the fact that the form indicates it was for loss prevention purposes only militates not only against finding that the incident report was prepared in anticipation of litigation, but also against finding that the report was prepared for the purpose of seeking professional legal advice.

 Instead of being prepared with the intention of seeking legal advice, the incident report was compiled in the ordinary course of relator's business as a means of accident prevention, and is, therefore, not privileged. *See State ex rel. Iron Fireman Corp. v. Ward*, 351 Mo. 761, 173 S.W.2d 920, 922 (banc 1943). That the incident report may have been subsequently used by relator's attorney or insuror is irrelevant. A document which is not privileged does not become privileged by the mere act of sending it to an attorney. McCormick on Evidence, § 96, p. 233 (3d ed. 1984); 8 Wigmore on Evidence § 2307, p. 592–593 (McNaughton Rev.1961).

The Missouri Hospital Association as Amicus Curiae, urges us to prohibit discovery of incident reports on the basis of public policy. The Association argues that the important function of eliminating potential hazards and improving the quality control of hospital care will be impaired if incident reports are not clothed in confidentiality, as the possibility of use in litigation would inhibit the preparation of complete and accurate reports. A similar public policy argument regarding the discoverability of hospital "peer review committee" records was recently rejected by our Supreme Court in *State ex rel. Chandra v. Sprinkle*, 678 S.W.2d 804 (Mo. banc 1984), wherein the court concluded that a plaintiff's right to discovery outweighed the public policy argument. We are constrained to follow this decision.

Therefore, although request for production number 4 seeking complete investigation reports is in violation of Rule 56.-01(b)(3) and defendant's objection thereto must be upheld, a more precisely worded request directed to the incident report, since it is prepared for preventive purposes rather than for litigation, would be proper.

 Request number seven seeks documentation of suicides, reported suicides, accidental deaths, attempted suicides or threatened suicides within five years prior to the date of the incident here involved. Relator's hospital records fall within the physician-patient privilege. *See State ex rel. Benoit v. Randall*, 431 S.W.2d 107, 109 (Mo. banc 1968); Section 491.060(5), RSMo. 1978. In the absence of a waiver of the privilege by the patient himself, a physician must assert on behalf of the patient the privilege regarding confidential communications between the patient and the physician; release of information without a waiver by the patient may give rise to a suit for damages. *See Thurman v. Crawford*, 652 S.W.2d 240, 242 (Mo.App.1983). No evidence has been presented that relator's patients have waived their privilege.

 That the hospital files are privileged does not necessarily end our inquiry. Where there is a need for or public interest in discovery of material protected by a privilege, disclosure of the privileged communications may be compelled, provided adequate steps are taken to insure that those on whose behalf the privilege is asserted will not suffer possible disclosure and humiliation or embarrassment. *See State ex rel. Lester E. Cox Medical Center v. Keet*, 678 S.W.2d 813 (Mo. banc 1984). In order to justify even limited disclosure via in camera proceedings, however, the public's interest in disclosure must be weighed against the public's interest in the confidentiality of the privileged relationship. *See generally State ex rel. Friedman v. Provaznik*, 668 S.W.2d 76, 78 (Mo. banc 1984) (grand jury inquiry justifies limited disclosure of material possibly subject to attorney-client privilege).

In *State ex rel. Lester E. Cox Medical Center v. Keet, supra*, a request for pro-

duction of medical records of patients other than plaintiff who had developed a bacteriological infection following surgery were sought. The Supreme Court refused to protect such records on the basis of the physician-patient privilege provided the trial judge, in his discretion, was willing to conduct an in camera inspection of the records and mask not only the names of the patients, but also all other material contained in the records which is necessary to "protect the identities and privacy of the non-party patients with appropriate attention to matters claimed to be privileged beyond the identifying characteristics themselves." *Id.* at p. 815. The public interest in open pre-trial discovery was deemed sufficient to outweigh the slight breach of privacy involved in such an in camera inspection by a trial judge.

Once again, we are constrained to follow this decision. However, there are noticeable differences between the records sought in *Keet* and those sought here. First, the quantity of records involved is obviously disparate. While we have no means of accurately determining numbers, it can hardly be doubted that considerably more patients of a hospital dedicated to the treatment of chemical dependency, alcohol abuse and depression would threaten suicide over a five year period than would surgical patients develop subsequent bacteriological infections over an approximate two year period, as in *Keet.* Additionally, it is such a well-known fact that drug and alcohol abusers and those suffering from depression commonly threaten suicide that the necessity of invading the privacy of other patients for the claimed purpose of establishing a known need to take protective measures against suicide attempts is hardly comparable with the importance of showing prior infections following surgery.

Finally, in contrast to the narrow scope of the request in *Keet,* seeking only information regarding exactly the same type of situation as in the case at hand, request number seven is so over broad as to be burdensome and oppressive. We see no relevance between accidental deaths, regardless of how sustained, and the deliberate ingestion of toilet bowl cleanser. Also, of questionable relevance would be a record of suicide or attempted suicide by leaping from a window, slashing of wrists, or otherwise than by ingestion of a harmful chemical. That patients in an institution such as that operated by defendant threaten suicide is of such common knowledge that the examination and redacting of five years of all patients records is hardly necessary to establish that relator should have been cognizant of such a danger. The limited utility of relator's privileged hospital records does not justify the cumbersome, expensive and time-consuming process necessary to discover the information sought and to protect, all the while, the confidentiality of relator's patients. The extensive production of documents sought by plaintiffs smacks of a fishing expedition. Courts should be wary of issuing fishing licenses to litigants who wish to cast their lines into privileged waters.

Therefore, because request number 4 in its present form violates the exclusion from discovery of documents prepared in anticipation of litigation, Rule 56.01(b)(3), respondent is ordered to set aside and vacate his order of June 21, 1984 as to request number 4, without prejudice to the filing of a further request for production limited to the incident report prepared for purposes other than trial preparation. Similarly, respondent is ordered to set aside and vacate said order as to request number 7, without prejudice to the filing of a more narrowly limited request and the inclusion of appropriate orders for in camera inspection, the masking of names and other editing by the trial judge to insure the privacy of non-party patients and, if requested, appropriate orders relating to the expenses involved in searching voluminous records as authorized by Rule 56.01(c).

KAROHL, P.J., and SNYDER, J., concur.