**David T. ENKE, Relator,**

v.

**The Honorable David P. ANDERSON, Judge of the Circuit Court, Division I, 31st Judicial Circuit, Respondent.**

No. 14931.

Missouri Court of Appeals, Southern District, Division Two.

June 19, 1987.

Robert T. Beezley, P.C., Springfield, for relator, David T. Enke.

Ronald R. Holliger, Kansas City, for Mo. Ass'n of Trial Attys.

G. Keith Phoenix, Timothy J. Phillips, Shepherd, Sandberg & Phoenix, P.C., St. Louis, for defendant Springfield Community Hosp.

FLANIGAN, Judge.

This is a prohibition proceeding, (Rule 97),[1] in which the relator is David T. Enke and the respondent is the Honorable David P. Anderson, Judge of the Circuit Court of Greene County, Division I. The issue is whether Judge Anderson exceeded his jurisdiction in denying relator's request for production of an "incident report" prepared by an employee of Springfield Community Hospital, Inc. The report concerns an incident which occurred on October 19, 1984, involving a fall which relator sustained in the hospital while relator was a patient.

In the underlying action in the trial court, relator, as plaintiff, sought damages from defendant Springfield Community Hospital, Inc., for its alleged negligence in causing injuries sustained by relator in the October 19 incident. The petition alleged that the hospital, through its employees, was negligent in various respects in caring for and treating relator, including failing to

---

1. Unless otherwise stated, all references to rules are to Missouri Rules of Court, V.A.M.R.

monitor his condition on October 19 and in permitting him to walk in the hall, "unassisted and unattended," shortly following the administration of a drug.

Relator, as plaintiff in the trial court, discovered the existence of the incident report, through use of an interrogatory. He then filed a request for production of the incident report. The report consisted of two pages. Defendant hospital objected to the request "on the ground that it seeks work product and documents protected by the attorney-client privilege." Relator then filed a motion to compel production of the incident report.

Five days prior to the hearing on relator's motion, defendant hospital filed a memorandum in opposition to that motion, together with a blank "Incident Report Form," a 26–page manual entitled "Incident Reporting Process," and the affidavit of Dotty Landwehr dated July 21, 1986. Rule 55.28 permits the trial court, when a motion is based on facts not appearing of record, to hear the matter on affidavits presented by the respective parties.

The body of the uncontroverted affidavit of Dotty Landwehr reads:

"1. I am Associate Director of Nursing at Springfield Community Hospital, and as such, have personal knowledge of the facts hereinafter set forth.

2. That on October 19, 1984, I completed a two-page incident report which contained information I accumulated regarding David Enke's fall. This form was prepared by me to document the incident in the hospital, and to record information which may be necessary to defend any malpractice litigation.

3. That the manual entitled 'Incident Reporting Process' applies to incident reports prepared at Springfield Community Hospital, and applied to the incident report prepared concerning David Enke's fall.

4. That the Incident Report Form, attached as Exhibit C to defendant's Memorandum in Opposition, is the Incident Report Form used for David Enke's fall.

5. That the Incident Report form concerning David Enke's fall was forwarded to the hospital's insurer as indicated on the bottom of the form."

The manual entitled "Incident Reporting Process" included the following:

"In recent years there has been a dramatic increase in both the number and cost of insurance claims.... The Incident Report Form is a risk management tool that notifies the hospital of potential areas of loss. It enables the hospital to take corrective action—reducing losses and improving the quality of health care provided in the hospital. The Incident Report Form is also a reporting vehicle required by the insurance company. It notifies the insurance company of potential liability claims....

An injury is the most obvious result of an incident.... An incident may also result in the likelihood of a claim. A claim may be made in the absence of an injury.... The primary function of the Incident Report Form is notification. The two groups notified are: Your hospital—the insurance company.... The Incident Report Form can aid the various hospital committees and administration in identifying potential areas of risk and implementing measures to reduce and prevent future claims. The overall effect is an increase in the quality of patient care provided by the hospital....

The insurance company demands notification. The Incident Report Form enables the insurance company to review the circumstances surrounding the incident and determine the appropriate course of action. Legitimate claims can be settled fairly and expeditiously. Questionable claims can be investigated on a timely basis and either settled or a defense can be provided.... An Incident Report Form must be completed as soon as practicable after the occurrence is witnessed or discovered, and before you complete your work day.... Several benefits are derived from prompt reporting: Corrective action can be taken. The facts of the occurrence are fresh in the mind of the person who witnesses or discovers the incident. Many potential

claims against the hospital can be eliminated or, at least, controlled."

The blank "Incident Report Form" carried a notation, "Not a part of medical records," immediately under its heading. At the bottom of the first page the form contained the instructions for the white (original) page to be sent to "Denver Insurance Company, c/o A.I.G. Risk Management, Inc., P.O. Box 1254, Wall Street Station, New York, N.Y. 10005." The "yellow" copy was to be sent to "Hospital Committee."

The trial court, after hearing oral arguments, sustained defendant hospital's objections to discovery of the incident report and denied relator's motion to compel its production. Relator then filed, in this court, a petition for writ of prohibition and this court issued its preliminary order in prohibition.

Relator contends that the incident report was discoverable and that it is "neither work product nor protected by the attorney-client privilege." Relator also contends that "incident reports which are made by hospitals ... are made in the routine and ordinary course of the hospital's business in regard to untoward incidents which occur. As such, the primary purpose for recording untoward events or occurrences concerning patients is to foster and promote better health care. The mere fact that an incident report can be used ... to report losses to risk management personnel or to insurance carriers does not clothe the report with the protection of work product or attorney-client privilege."

Respondent takes the position that relator improperly resorted to the remedy of prohibition because "relator is requesting affirmative relief [production of the incident report] as opposed to preventive relief. The writ of prohibition is preventive in nature, rather than corrective." In making this contention, respondent relies upon *State ex rel. Amato v. Clifford,* 689 S.W.2d 78, 81 (Mo.App.1985), where the court said "It [the writ of prohibition] issues to restrain the commission of a future act and

not to undo one that has already been committed."

On the merits, respondent contends that the incident report "is work product and is protected by the attorney/client privilege," and that respondent did not abuse his discretion or exceed his jurisdiction in denying discovery of the incident report.

■ It may be conceded that mandamus, Rule 94, would have been relator's more appropriate remedy. *St. Louis Little Rock Hosp., Inc. v. Gaertner,* 682 S.W.2d 146, 148[1, 2] (Mo.App.1984); *State ex rel. Chandra v. Sprinkle,* 678 S.W.2d 804 (Mo. banc 1984); *State ex rel. J.E. Dunn Const. v. Sprinkle,* 650 S.W.2d 707, 712 (Mo.App. 1983). Mandamus will lie to review the action of the trial court in sustaining an objection to discovery of a matter which is properly discoverable. *St. Louis Little Rock Hosp., Inc. v. Gaertner,* supra, 682 S.W.2d at 148. On the other hand, prohibition is available to prevent a trial court from exceeding its jurisdiction in ordering discovery of privileged matters, *State ex rel. Cain v. Barker,* 540 S.W.2d 50, 51 (Mo. banc 1976), or in ordering production of work product[2] when there has been no showing, as required by Rule 56.01(b)(3) "that a party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the material by other means." See *May Dept. Stores Co. v. Ryan,* 699 S.W.2d 134 (Mo.App.1985).

In *St. Louis Little Rock Hospital, Inc. v. Gaertner,* supra, 682 S.W.2d at 148 the court said:

"The distinction between mandamus and prohibition is at best blurred, at worst nonexistent, and the subject matter to which the two writs apply overlap to a great extent. See Tuchler, 'Discretionary Interlocutory Review in Missouri; Judicial Abuse of the Writ?' 40 Mo.L. Rev. 577, 586–87 (1975). Since prohibition would lie here, we see no reason to deny the applicability of mandamus."

---

**2.** For an excellent discussion of work product, see "Work Product in Missouri," Larry L. McMullen and Robin V. Foster, 50 Mo.L.Rev. 563 (1985).

■ In the instant case the controlling issue—the discoverability of the incident report—has been fully briefed by both sides and it would be a sacrifice of substance to form if this court were to hold, as it does not, that review of the trial court's ruling on that issue should be denied because relator resorted to prohibition rather than mandamus. This court will resolve the basic dispute on its merits.

Rule 56.01 contains "General Provisions Governing Discovery." Rule 56.01(b) deals with scope of discovery. Rule 56.01(b)(1) confines itself to the discovery of "any matter, *not privileged.*" [3] (Emphasis added.) Rule 56.01(b)(3) deals with the discovery of documents and tangible things "otherwise discoverable under subdivision (b)(1) of this Rule." If the matter sought is "privileged," it is not discoverable under Rule 56.01(b)(3).

Rule 56.01 became effective on January 1, 1975. Rule 56.01(b)(3) deals with matters commonly referred to as "work product." As pointed out in *May Dept. Stores Co. v. Ryan,* supra, prior to 1975 there was no need to distinguish between privileged matter and work product because both were absolutely excluded from discovery. The adoption of Rule 56.01(b)(3) created a limited exception to the work product immunity from discovery, but privileged matters remain "absolutely nondiscoverable."

■ If the instant report is a privileged document, as one falling within the attorney-client privilege or the insured-insurer privilege, Rule 56.01(b)(1) affords no basis for discovery of it, so long as the privilege has not been waived. Relator makes no claim of waiver here. On the other hand, if the incident report is not privileged and is otherwise discoverable under Rule 56.01(b)(1), it may still have the limited protection afforded work product if it was prepared in anticipation of litigation or for trial by the hospital or for the hospi-

tal's attorney or insurer. In that event, discovery may be obtained only if relator has shown that he has substantial need of the incident report in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the incident report by other means. Rule 56.01(b)(3).

Cases dealing with the discovery of incident reports, since the adoption of Rule 56.01(b)(3), include *State ex rel, Faith Hosp. v. Enright,* 706 S.W.2d 852 (Mo. banc 1986), *State ex rel. Cain v. Barker,* supra, *May Dept. Stores Co. v. Ryan,* supra, and *St. Louis Little Rock Hosp., Inc. v. Gaertner,* supra.

In *State ex rel. Cain v. Barker,* a wrongful death action was brought against one Cain, arising out of a highway collision allegedly caused by Cain's negligence. The day following the collision Cain gave a written statement to a representative of his liability insurance carrier. Two days later he gave another written statement to the same representative. Plaintiff in the wrongful death action sought discovery of the two statements and the trial court entered an order permitting discovery. The supreme court, in a prohibition proceeding, made permanent its provisional rule preventing the trial judge from enforcing his order.

The court held, at p. 53, that an insured-insurer relationship existed between Cain and his insurer at the time the statements were given and that "by reason of such relationship, the statements given by Cain to his insurer fall within the protection of the attorney-client privilege."

In *St. Louis Little Rock Hospital v. Gaertner,* supra, a mandamus proceeding, the underlying action was one for wrongful death against defendant hospital. The plaintiffs in the underlying action sought recovery for the allegedly wrongful death

---

3. The language of Rule 56.01(b)(1) is contained in Rule 26(b)(1) of the Federal Rules of Civil Procedure. With regard to the latter rule a leading commentator has said:

"Rule 26(b) provides for discovery regarding matters 'not privileged.' The term 'privileged,' as used in Rule 26(b), corresponds with the concept of privilege as developed in the law of evidence. Therefore, the scope of privilege in discovery is neither broader nor narrower than that which would be applied at trial...."

Moore's Fed.Prac. Sec. Ed., Vol. 4, § 26.60.

of their decedent who committed suicide by drinking a bottle of cleanser while a patient in the hospital for treatment of alcohol abuse and depression. The issue was the discoverability of an incident report prepared by a nurse employed by the hospital.

A manual issued by the hospital provided for the preparation of incident reports in triplicate. One copy was sent to the hospital administration, one to the head of the involved department and one to the hospital's insurer. The insurer's copy, however, was sent only on a monthly basis rather than immediately after the incident. The insurer "fed" the reports into a computer and sent a computer printout back to the hospital. The printout was used by a hospital committee to form the basis for "corrective and preventive action."

Holding the incident report to be discoverable, the court of appeals said it was significant that the report form bore the heading "Patient Incident Report—Not a Notice of Loss—For Loss Prevention Purposes Only." The court held that the incident report was not entitled to the status of work product because it was not a document prepared in anticipation of litigation.

The court said, at p. 150: "The use served by these incident reports is obviously that of future loss prevention, an important and praiseworthy objective. But they are not documents prepared in anticipation of litigation so as to invoke application of the work product exception to discovery."

In holding that the incident report was not protected by the attorney-client privilege, the court said, at p. 150–151:

"In order to be privileged, a communication between a client and his attorney, or between an insured and his insuror, must be within the context of the attorney-client relationship.... In other words, the purpose of the communication must be to secure legal advice from the client's attorney.... The purpose of the incident report was not to enable relator or its insuror to obtain legal advice, but rather to help relator reduce the number of accidents at its facility. The incident report form called for the nurse to fill in answers coded so that a computer would be able to read the responses. There is no indication that the coded responses were decipherable by relator's attorneys or that an incident report ever found its way into an attorney's hands. Moreover, the fact that the form indicates it was for loss prevention purposes only militates not only against finding that the incident report was prepared in anticipation of litigation, but also against finding that the report was prepared for the purpose of seeking professional legal advice.

Instead of being prepared with the intention of seeking legal advice, the incident report was compiled in the ordinary course of relator's business as a means of accident prevention, and is, therefore, not privileged."

In *May Dept. Stores Co. v. Ryan,* supra, in an opinion written by P.J. Carl R. Gaertner, who was also the author of the opinion in *St. Louis Little Rock Hosp., Inc. v. Gaertner,* supra, an incident report was held not to be discoverable. This was a prohibition proceeding in which the underlying action was one for false imprisonment brought by plaintiff against defendant May Dept. Stores Co. and its employee Lutz. Lutz, who had detained the plaintiff, prepared an incident report on the day of the alleged false imprisonment and the report was transmitted to the store's liability insurer. The court of appeals agreed with the defendant that the report was not discoverable.

Citing *State ex rel. Cain v. Barker,* supra, the court said, at p. 136, that the insured-insurer relationship is surrounded "with the same cloak of privileged confidentiality that protect communications between attorney and client from discovery."

The court pointed out that the adoption of Rule 56.01(b)(3) created a "limited exception to the work product exclusion." At p. 137 the court said:

"Here the plaintiff seeks a report concerning an incident about which she herself can testify. There is no showing that defendant Lutz, who prepared the report, is unavailable. Plaintiff has demonstrated neither a need nor an inability to obtain substantially equivalent evi-

dence. Second, the report involved herein is privileged by virtue of the insurer-insured/attorney-client privilege. Therefore, even were the plaintiff in the underlying case at bar to make the requisite showing of need and undue deprivation, the incident report still would not be discoverable."

The court said, at p. 138: "A report to a liability insurer can have no purpose other than use in potential litigation." The court also said that the written report concerning the temporary detention of a customer "does no more to facilitate the ordinary and usual business of a retail store than does the taking of photographs at the scene of an accident facilitate the operation of a railroad," and thus was not discoverable on the theory that it was a routine business record.

The court also said, at p. 138:

"Today, in what is frequently called the most litigious society in the history of mankind, we would indeed be naive and unrealistic if we failed to agree with our brethren that a written report of an employee to his employer of any untoward incident is required because of potential litigation."

Of special significance to the case at bar is the following language at p. 138:

"In *State ex rel. Little Rock Hospital v. Gaertner*, 682 S.W.2d 146 (Mo.App. 1984), we held an incident report prepared by an employee and forwarded to an insurance company was subject to discovery. However, as opposed to the facts in the instant case, the report in *Little Rock Hospital*, was prepared as part of a computerized future loss prevention program, not with a view toward potential litigation. The report form expressly stated that it was 'not a notice of loss.' Rather, it was made and used in the ordinary course of the hospital's business as a means of accident prevention. Therefore, the report was neither privileged, as it was not prepared or transmitted pursuant to the insurance or indemnity agreement, nor was it work product, as it was not made in anticipation of litigation. Here, the converse is true in both respects."

In *State ex rel. Faith Hosp. v. Enright*, supra, Faith Hospital, a defendant in the underlying medical malpractice action, brought an action in prohibition to prevent the trial court from allowing the plaintiffs in the underlying action to discover certain documents, including certain incident reports. Other defendants in the underlying action were physicians.

In the trial court plaintiffs requested, and were granted, discovery of incident reports "relating in any manner to medical services provided by" the named physician defendants. The hospital took the position that the requested incident reports were prepared in anticipation of litigation and therefore exempt from discovery, as work product, under Rule 56.01(b)(3). Rejecting this argument, the court said, at p. 856:

"However, the record before this Court contains only the bare allegation that these reports were prepared for that purpose. Relators have made no attempt to describe the report or the circumstances under which they were made. Blanket assertions of the work-product privilege will not suffice to invoke its protection. *State ex rel. Friedman v. Provaznik*, 668 S.W.2d 76, 80 (Mo. banc 1984). Under the present circumstances, prohibition is unavailable for these incident reports. *Id.*"

The case at bar is controlled by *State ex rel. Cain v. Barker*, supra, and *May Dept. Stores Co. v. Ryan*, supra, and is distinguishable from *St. Louis Little Rock Hosp., v. Gaertner*, supra, on which relator primarily relies, and *State ex rel. Faith Hosp. v. Enright*, supra.

■ The trial court was entitled to believe the affidavit of Dotty Landwehr and the other supporting documents that the incident report of relator's fall, which she completed on October 19, was prepared for the purpose of recording information "which may be necessary to defend any malpractice litigation," that it was prepared in accordance with the manual, and that it was promptly forwarded to the hospital's insurer. The hospital, as an insured, could act only through its employees, and the incident report was entitled to the pro-

tection of the attorney-client privilege.[4] *State ex rel. Cain v. Barker*, supra; *May Dept. Stores Co. v. Ryan*, supra. Since it was privileged, and since the privilege had not been waived, the incident report was not discoverable under Rule 56.01.

*St. Louis Little Rock Hosp., Inc. v. Gaertner*, supra, is distinguishable because the *only* purpose of the incident report in that case was to improve safety conditions in the hospital. Although that purpose may have been an additional one for the incident report in the case at bar, the existence of that commendable purpose did not deprive the incident report of its status as a privileged document, a statement by an insured to its liability insurer falling within the attorney-client privilege.

*State ex rel. Faith Hosp. v. Enright*, supra, is distinguishable because defendant Springfield Community Hospital, Inc., in the case at bar, did not merely object to the production of the report and fail to offer evidence describing the report or the circumstances under which it was made. Here the hospital accompanied its objections with the Landwehr affidavit, the manual, and a blank copy of the report form.

This court concludes that Judge Anderson did not exceed his jurisdiction or abuse his discretion in denying relator's motion to compel production of the incident report.

In this court relator seeks to argue the contents of certain materials which were not presented to the trial court and accordingly are not considered here.

This court holds that the preliminary order in prohibition was improvidently granted and it is hereby vacated.

PREWITT, P.J., and HOGAN and MAUS, JJ., concur.

---

**4.** "[T]he attorney-client privilege attaches to corporations as well as to individuals.... As an inanimate entity a corporation must act through its agents. A corporation cannot speak directly to its lawyers." *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 1991, 85 L.Ed.2d 372 (1985). See 98 A.L. R.2d 241 (Right of corporation to assert attorney-client privilege).