**In re BOARD OF REGISTRATION FOR THE HEALING ARTS,**
Appellant,

v.

**Paul M. SPINDEN, Respondent.**

**No. WD 42927.**

Missouri Court of Appeals,
Western District.

Oct. 9, 1990.

Rehearing Denied Dec. 4, 1990.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for appellant.

G. Keith Phoenix, St. Louis, for respondent.

Before LOWENSTEIN, P.J., and FENNER and ULRICH, JJ.

LOWENSTEIN, Presiding Judge.

The narrow issue posed in this action in prohibition concerns the limits of discovery in an administrative case. Specifically, should a doctor, whose license is governed by a board that has filed a disciplinary complaint against him, be allowed to discover from the board before trial: 1) incident, occurrence or investigative reports proposed or possessed by the board; 2) reports created by or in the Board's possession relating to the facts of the complaint; 3) statements taken relating to the facts; and, 4) documents provided by the board to any person expected to be called as an

expert witness? The Board of Registration for the Healing Arts (Board) objected to a doctor's discovery based on the attorney-client privilege and the work product doctrine. The circuit court ultimately affirmed the ruling of the Administrative Hearing Commission's (AHC) commissioner, respondent Spinden, and allowed discovery.

■ The Board was created under § 334.120.1, RSMo 1986 [1] "for the purpose of registering, licensing and supervising all physicians and surgeons ... in this state." Under § 334.240, the Board licenses and supervises physicians. It also investigates claims after receiving information that a doctor has violated a law pertaining to the practice of medicine. Upon probable cause, the board files a "complaint" with the A.H.C. See C.S.R. 15–1.010 through 2.170. The A.H.C. conducts hearings and may order suspension, revocation, or probation of the license. Under the law and the Code of State Regulations any party may obtain discovery in the same manner and on the same conditions as provided by the Rule for circuit court. After hearing, the matter may be appealed to circuit court. In this matter the Board on March 13, 1989 filed a complaint pursuant to §§ 621.015–621.205 against a licensed physician, Richard Lagueruela, an anesthesiology resident at Children's Hospital, Washington University, St. Louis, Missouri. As early as September 1988 the Board and counsel from the Attorney General's office began investigating the doctor. The Board sought, "disciplinary action against the license of ... Lagueruela to practice the healing arts for violations of Chapter 334...."

The violations spelled out by the complaint chronicle a sad series of events that are basically not in dispute. A thirteen year old patient had a spinal fusion to correct curvature of the spine caused by Duchene's muscular dystrophy. After time on a ventilator, the child developed "Adult Respiratory Distress Syndrome." Following two meetings with the doctor, the parents elected to withdraw ventilator support and have the boy "no-coded,"

which means that no heroic effort would be made if respiratory arrest occurred. Without filling out the required prescriptions, Dr. Laguereula administered morphine sulfate, pheno-barbital sodrin, and potassium chloride, apparently to ease the final pain after disconnecting the ventilator. Failure to document the use of these drugs constituted the first count of the Board's complaint; the unhooking of the ventilator constituted the second count. The Board's third count alleges that Dr. Lagueruela deliberately misstated the primary cause of death on the death certificate as Adult Respiratory Distress Syndrome instead of the administration of drugs.

When faced with discovery requests, the Board proclaimed it had "provided the names of persons who have knowledge in answers to interrogatories and respondent may contact these witnesses directly." The law of this state has long been that names and addresses of witnesses are not normally subject to any work product immunity. *State ex rel. Mueller v. Dixon*, 456 S.W.2d 594, 598 (Mo.App.1970). But Dr. Lagueruela continued to seek discovery of the actual reports and statements. The A.H.C.'s hearing officer rejected the Board's claims of attorney-client privilege and work product, and ordered the Board to comply with discovery. The Board submitted affidavits of its attorney and investigators to show that the materials fell under the attorney-client privilege. In sum, these affidavits discussed when and why interviews and investigations were conducted after the Board set up this file concerning the doctor. Spinden's order hones in on the information sought under the writ as being primarily 1) the reports of facts prepared by the Board prior to the attorney entering the case, 2) reports of facts which "at some point [were] given to the Board's attorney," and, 3) statements of witnesses. This order specifically noted that if any part of the materials were truly the impressions of conclusions or legal theories of Board counsel, these parts would be protected.

---

**1.** All references are to Revised Statutes of Missouri 1986 unless otherwise indicated.

The Board obtained a preliminary order prohibiting Spinden from enforcing discovery, but the circuit court then quashed its writ. This appeal followed.

■ In an action for prohibition, the law presumes that the trial judge acted correctly. *State ex rel. Martin v. Peters*, 649 S.W.2d 561, 563 (Mo.App.1983). To overcome this presumption, the party seeking prohibition has the burden to show that the trial judge exceeded his jurisdiction. *Id.* Decisions pertaining to discovery are reversed only for an abuse of discretion. *Williams Carver Co. v. Poos Brothers, Inc.*, 778 S.W.2d 684, 687 (Mo.App.1989).

■ As stated earlier, the Rules apply to discovery issues before the A.H.C. Section 536.073.2(1). The applicable rule is 56.01, which governs general discovery principles. Rule 56.01(b)(1) allows parties to "obtain discovery regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action...." (Emphasis added.) Rule 56.01(b)(3) governs discovery of trial preparation materials. It permits a party to discover "documents and tangible things *otherwise discoverable* under subdivision (b)(1) of this Rule 56.01 ..." (Emphasis added.) Thus, any material that is privileged under Rule 56.01(b)(1) is not discoverable under rule 56.01(b)(3).

■ Some confusion may exist because information falling under either the attorney-client or the work product concepts was absolutely immune from discovery before 1975. Rule 56.01, effective as of January 1, 1975, changed this practice. Subdivision (b)(1) retained complete immunity, absent a client's waiver, for the attorney-client privilege. But Subdivision (b)(3) demoted work product to a qualified immunity and permitted discovery only upon a showing of need and hardship. *May Dept. Stores Co. v. Ryan*, 699 S.W.2d 134, 137 (Mo.App.1985). Thus, if material sought to be discovered is classified under the attorney-client privilege, it is absolutely immune from discovery, and the work product doctrine issue becomes irrelevant.

The Board's first point on appeal is that Dr. Lagueruela seeks to discover materials that are privileged under Rule 56.01(b)(1). The attorney-client privilege encompasses "any professionally oriented communication between attorney and client ... regardless of [whether it was prepared in] anticipation of litigation." *May Dept. Stores Co. v. Ryan*, 699 S.W.2d at 136. The phrase "professionally oriented communication" is vague. Both the appellant Board and the respondent Spinden rely on *State ex rel. Great Am. Ins. Co. v. Smith*, 574 S.W.2d 379 (Mo. banc 1978), to resolve the issue. *Great American* was an original action in prohibition to decide whether three letters concerning fire loss claims, written by an attorney to his clients (insurance companies), were protected from discovery by the attorney-client privilege. The *Great American* court held that the letters fell within the ambit of attorney-client privilege, and it issued a permanent writ of prohibition. The players in the case were: (1) Cannova, owner of a restaurant destroyed by fire; (2) Mid–Continent Bank, loss-payee under Cannova's insurance policies; (3) insurance companies which issued the policies, also the relators in the case; (4) Risjord, author of the letters in question and also attorney to relators; and (5) GAB, investigator hired by Risjord and his clients. The letters contained: (1) results of attorney Risjord's investigation; (2) Risjord's conclusions, opinions, and impressions concerning the investigation results and case strategy; and (3) Risjord's recommendations to his clients (relators) about what they should do in the case.

Here the Board contends that as long as the party opposing discovery meets a three-prong test set out in *Great American*, the attorney-client privilege automatically attaches to prevent discovery. This test is as follows: (1) the attorney-client relationship must have existed at the time the communication was made or advice given; (2) the attorney-client relationship must have existed as to the subject matter of the communication or advice, or (3) the communication must have been made to the attorney in his professional capacity and on account of the attorney-client relationship. *State*

*ex rel. Great Am. Ins. Co. v. Smith*, 574 S.W.2d at 386.

Spinden concedes that actual communications between an attorney and his client are privileged, but contends that investigative reports prepared by the client or at his direction are not privileged. The *Great American* court accurately characterizes the attorney-client relationship and the attorney-client privilege:

> When a client goes to an attorney and asks him to represent him on a claim which he believes he has against someone or which is being asserted against him, even if he as yet has no knowledge or information about the claim, subsequent communications by the attorney to the client should be privileged. Some of the advice given by the attorney may be based on information obtained from sources other than the client. Some of what the attorney says will not actually be advice as to a course of conduct to be followed. Part may be analysis of what is known to date of the situation. Part may be a discussion of additional avenues to be pursued. Part may be keeping the client advised of things done or opinions formed to date. All of these communications, not just the advice, are essential elements of attorney-client consultation. All should be protected.

*State ex rel. Great Am. Ins. Co. v. Smith*, 574 S.W.2d at 384–85 (footnotes omitted).

But the court also distinguishes information that is not covered by the attorney-client privilege and thus, is discoverable.

> This does not mean that discoverable factual information can be made privileged by being recited by the attorney or the client in their confidential communication. *Only the actual attorney-client communications are privileged.* If [the investigative report documents prepared by investigators who were hired by the attorney or client] had been attached to or discussed in the letters from Risjord [attorney] to Relators [client], the fact that the attorney's letters would be privileged would not cause the GAB [investigative] reports or FBI [investigative reports] to become protected by the attor-

ney-client privilege. They would still be discoverable under Rule 56.01(b).

*State ex rel. Great Am. Ins. Co. v. Smith*, 574 S.W.2d at 384–385 (footnotes omitted).

■ The appellant Board argues that the attorney-client privilege applies because the Board's general counsel, Audrey Hanson, was involved in the investigation. Specifically, she was present when the Board decided to investigate Dr. Lagueruela, she later advised the Board's staff how to conduct the investigation, she communicated with the investigator throughout the investigation, and she reviewed evidence obtained in the investigation. The last cited language of *Great American* directly disposes of the Board's argument. Specifically, the investigative reports in this case are analogous to the GAB and FBI reports in *Great American*. In *Great American*, the letters sought to be discovered contained the attorney's mental impressions and trial strategy, and, thus, were privileged. The court, however, explicitly stated that even if the GAB or FBI investigative reports been attached to or discussed in the privileged letters, the reports would not become privileged. Thus, Ms. Hanson's mere involvement in the investigation does not shield the investigative reports from discovery. Appellant's first point on appeal is denied.

■ Appellant's second point is that the work product doctrine applies to shield the investigative reports from discovery. The work product doctrine applies to two types of information: opinion work product and trial preparation materials. Opinion work product concerns the client's litigation and includes mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party. Opinion work product is absolutely immune from discovery. *State ex rel. Spear v. Davis*, 596 S.W.2d 499, 500–501 (Mo.App. 1980); Rule 56.01(b)(3). In *Spear*, the eastern district refused to prohibit an insurance company's adjuster from being deposed about a fire loss. The court ruled he could be questioned as to the facts of the investigation, but not as to mental impressions.

*Id.* at 501. Opinion work product is not in issue here.

■ Unlike opinion work product, trial preparation materials are qualifiedly immune from discovery. To be protected from discovery, trial preparation materials must be (1) documents or tangible things, and (2) prepared by or for a party or that party's representative, and (3) prepared in anticipation of litigation or for trial. Rule 56.01(b)(3). Thus, if one of these requirements is not met, the materials are discoverable. If all of the requirements are met, trial preparation materials may be discovered only if the party seeking discovery shows a substantial need for the items and an inability to get the substantial equivalent without undue hardship. *Porter v. Gottschall,* 615 S.W.2d 63, 65 (Mo. banc 1981); Rule 56.01(b)(3).

■ The Board argues that § 620.010.14(7) prevents Dr. Lagueruela from discovering the investigative reports. This statute was amended in 1989 to provide that "... Each agency is entitled to the attorney-client privilege and work product privilege to the same extent as any other person ..." This amendment adds nothing to the appellant's argument. Section 536.073.2(1) already provided that Supreme Court Rules of discovery applicable to circuit court civil actions also apply to proceedings before the A.H.C. These civil rules include Rule 56.01, which governs the general rules of discovery. The appellant's argument that § 620.010.14(7) protects the Board's investigative reports from discovery carries no weight.

The respondent argues that the Board fails to establish that the materials were prepared in the anticipation of litigation or for trial, the third requirement of Rule 56.01(b)(3), since the materials were prepared in the ordinary course of the Board's business. Spinden characterizes this "business" as investigating complaints under the Missouri General Assembly's mandate in § 334.240 which states "... the Board *shall* investigate, ..." Emphasis added. The facts show that the investigative reports were indeed prepared pursuant to § 334.240. The appellant counters that the reports were prepared in anticipation of litigation because the Board and physician must litigate the issue of whether cause exists to discipline the physician. This litigation occurs only if a doctor does not voluntarily submit himself to discipline nor ask to be a part of this action. Dr. Lagueruela did not voluntarily submit himself to discipline. The Board maintains, the investigative reports were necessarily prepared for use in disciplinary litigation before the A.H.C.

There are no Missouri cases applying the work product doctrine to disciplinary actions against professional licensees. The Board specifically analogizes the Board's position to that of an insurance company and relies on several cases involving insurers; *St. Louis Little Rock Hospital v. Gaertner,* 682 S.W.2d 146 (Mo.App.1984); *May Dept. Stores Co. v. Ryan,* 699 S.W.2d 134 (Mo.App.1985); *Enke v. Anderson,* 733 S.W.2d 462 (Mo.App.1987); *See also: State ex rel. Cain v. Barker,* 540 S.W.2d 50 (Mo. banc 1976); *State ex rel. Faith Hosp. v. Enright,* 706 S.W.2d 852 (Mo. banc 1986).

The Board's role, as defined by statute differs completely from that of an insurer. The Board's role is more active and prosecutial. In contrast, an insurer is passive because it does not defend its insured until a suit has been filed. Although the issue in *Cain v. Barker,* 540 S.W.2d at 51, differs from that here, the court points out the significance of whether the party bringing the suit is the party seeking discovery. In *Cain,* the defendant-insured gave a statement to his insurer. As relator, he sought a writ of prohibition to prevent plaintiff from discovering that statement. The plaintiff argued discovery should be allowed because the insured "waived any privilege ... since [he] has denied liability ..." *Cain v. Barker,* 540 S.W.2d at 57. Although the *Cain* court ultimately denied discovery based on attorney-client privilege, it indicated party alignment is significant in deciding discovery issues: "In this case relator has not instituted the suit involving the collision in which he was involved. He is a defendant, brought into court involuntarily." Such is the alignment

here. The Board conducts investigations, recommends and metes out discipline, and files and prosecutes complaints against licensed physicians.

For support, the Board cites *May Dept. Stores Co. v. Ryan*, 699 S.W.2d at 134. In *May*, a customer was detained on suspicion of shoplifting. The customer sued for false imprisonment and sought to discover a report prepared by a May Company employee the same day as the incident. May Company transmitted the report to its liability insurer. The *May* court protected the report from discovery because it fell within the insurer-insured/attorney-client privilege and because it was prepared in anticipation of litigation and no showing of need and undue hardship was made. The *May* case differs from the case at bar because the *May* court held that the insurer-insured/attorney-client privilege applied. No such privilege applies here. Dr. Lagueruela seeks to discover statements made and information gathered by a state-created entity that is statutorily compelled to monitor and regulate doctors. The facts here come closer to the *St. Louis Little Rock Hospital v. Gaertner*, 682 S.W.2d at 151, where discovery was allowed of an incident report where the hospital had an accident prevention program in place as a part of its ordinary course of business. *St. Louis Little Rock Hospital*, 682 S.W.2d at 151.

The rules of discovery are to be liberally construed. A licensee's eligibility to practice a particular profession is controlled by the Board. The government and the public have a right to expect entities like the Board to ensure that competent and ethical people practice these regulated professions. By the same token, in a disciplinary proceeding the licensee, as a matter of fair play, should be allowed to discover, within the Rules, all materials relating to those proceedings. *Christiansen v. State Bd. of Accountancy*, 764 S.W.2d 943, 952 (Mo.App.1988), and *Christiansen v. State Bd. of Accountancy*, 764 S.W.2d 952, 956 (Mo.App.1988).

The appellant argues that permitting discovery in this case unfairly allows Dr. Lagueruela to reap the benefits of the Board's labors. It seems more unfair to require a doctor to try to duplicate the Board's investigation so he can, at best, guess the strength of the Board's case against him. Requiring Dr. Lagueruela to show substantial need and undue hardship presupposes that the Board gathered its materials in anticipation of litigation and not in the ordinary course of business.

The Board further argues that if this court deems the investigative reports were prepared in the ordinary course of the Board's business, then the Board will essentially be deprived of work product immunity. This court disagrees. The work product doctrine would protect materials such as the Board's minutes, votes, and the broad category of materials constituting opinion work product. This is not an invitation for the Board to commingle its trial strategy information with its investigative reports. As proposed by Spinden such materials could be reviewed *in camera*, and information covered by work product doctrine could be expunged before allowing discovery. *See e.g., Sires v. National Service Corp.*, 560 So.2d 448, 449 (La.App. 1990).

As discussed earlier, the work product doctrine protects materials prepared in anticipation of litigation, but the "mere likelihood of suit is not sufficient to invoke the privilege." *Stauffer Chemical Co. v. Monsanto Company*, 623 F.Supp. 148, 152 (E.D.Mo.1985). Materials prepared in the ordinary course of business do not fall within the work product exception. *Id.* Even assuming the Board could satisfy the court that the materials were prepared for an imminent trial, this court rules such action was in the ordinary course of its business, defeating any privilege.

The trial court is authorized to control and limit discovery. Furthermore, the propriety of discovery is within the trial court's discretion and will not be disturbed except for abuse of discretion. *Williams Carver Co. v. Poos Bros., Inc.*, 778 S.W.2d at 687. Appellant did not establish that the trial court abused its discretion in finding for the respondent Spinden. The finding

that the materials sought to be discovered were not the mental impressions of the attorney and not absolutely immune was correct. *State ex rel. Spear v. Davis,* 596 S.W.2d at 500. Likewise the finding that the materials were prepared in the ordinary course of the Board's business as mandated by § 334.240 was also correct. The ruling that the sought after materials were not privileged was correct because these materials clearly did not qualify for an attorney-client privilege. Instead, they were prepared in the ordinary and mandated course of the Board's business and fail to achieve a work product status. The material sought was relevant and material, and would provide the doctor-litigant access to proper information to develop his contentions and arguments as framed by the pleadings. *State ex rel. Anheuser v. Nolan,* 692 S.W.2d 325, 328 (Mo.App.1986). In so finding, the trial court neither erroneously declared nor erroneously applied the law. The judgment denying the writ is affirmed.