David E. NELSON, et al., Appellants,

v.

Michael J. WAXMAN, M.D., and Kansas City Pulmonary Clinic, P.A., Respondents.

No. SC 81689.

Supreme Court of Missouri, En Banc.

Jan. 11, 2000.

William H. Pickett, David T. Greis, Kansas City, for appellants.

Arlen L. Tanner, Norman I. Reichel, Jr., Kansas City, for respondents.

WILLIAM RAY PRICE, Jr., Chief Justice.

This case involves alleged trial court errors concerning the admissibility of evidence and the propriety of certain assertions during the opening statement and closing arguments of counsel in a medical malpractice wrongful death suit. Judgment was entered upon a jury verdict in favor of the defendants. We affirm.

## I.

Iris Jeanne Nelson checked into the emergency room on July 15, 1991, complaining of shortness of breath. She died in the hospital on July 28, 1991. Her husband, Frank Nelson, and her children,

David Nelson, Lana Beer, and Jeffrey Nelson ("Appellants"), filed a medical malpractice and wrongful death suit against Michael J. Waxman, M.D., and the Kansas City Pulmonary Clinic, P.A. ("Respondents").

Appellants alleged that Dr. Waxman negligently failed to timely diagnose and treat a complication from the placement of a femoral arterial catheter which resulted in her death. Specifically, appellants contend that a massive retroperitoneal hematoma (bleed) resulted when the femoral artery was punctured during the placement of the catheter on July 17, 1991; that symptoms of the complication developed over a four-day period; that Dr. Waxman failed to timely recognize the symptoms and diagnose and treat the complication; and that such negligence caused Mrs. Nelson's death on July 28, 1991.

A jury trial was held in Jackson County Circuit Court and the jury returned a verdict in favor of the defendants. On appeal, appellants raise six points: 1) permitting cross-examination concerning the failure of an expert witness to pass a board certification examination; 2) admitting an expert witness' curriculum vitae; 3) permitting the use of the word "killed" during closing argument; 4) permitting cross-examination concerning the length of time between Mrs. Nelson's death and the involvement of an expert witness; 5) permitting defense counsel to say in his opening statement that he would use certain deposition testimony when he later did not do so; and 6) the cumulative effect of the errors warrants reversal and remand for a new trial.

## II.

Appellants' first point is that the trial court erred in allowing cross-examination of an expert witness regarding his failure of a board certification examination. The admissibility of evidence lies within the sound discretion of the trial court and will not be disturbed absent abuse of discretion. *Kansas City v. Keene Corp.*, 855

S.W.2d 360, 367 (Mo. banc 1993). "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. banc 1991) (citation omitted).

"It is well established that the extent and scope of cross-examination in a civil action is within the discretion of the trial court and 'will not be disturbed unless an abuse of discretion is clearly shown.'" *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 868–69 (Mo. banc 1993) (citation omitted). "This is especially true for cross-examinations of expert witnesses. There is wide latitude 'to test qualifications, credibility, skill or knowledge, and value and accuracy of opinion.'" *Id.* at 869. Within this "wide latitude," the trial court has discretion whether to allow or exclude evidence of an expert witness' past failure to pass a board certification examination. *See Ward v. Epting*, 290 S.C. 547, 351 S.E.2d 867 (App.Ct.1986) (affirming trial court's order admitting evidence that defendant-physician failed board exams); *Kurrack v. American Dist. Telegraph Co.*, 252 Ill.App.3d 885, 192 Ill.Dec. 520, 625 N.E.2d 675 (1993) ("Although we believe this issue is a close call, we find that the trial court did not commit reversible error by ruling against plaintiff's motion in limine and allowing the cross-examination of [expert witness] regarding his failure to pass the certification examination."); *McCray v. Shams*, 224 Ill.App.3d 999, 167 Ill.Dec. 184, 587 N.E.2d 66 (1992) (agreeing with the *Ward v. Epting* analysis but holding trial court did not err in excluding defendant-physician's failed past board examinations); *Campbell v. Vinjamuri*, 19 F.3d 1274 (8th Cir.1994) (affirming trial court's order excluding evidence that defendant failed board exam); *Jackson v. Buchman*, 338 Ark. 467, 996 S.W.2d 30 (1999) (same); *Gipson v. Younes*, 724 So.2d 530 (Ala.Civ.App.1998) (same); *Sommers v. Friedman*, 172 Wis.2d 459, 493 N.W.2d 393 (App.Ct.1992) (same).

Appellants rely on *Beis v. Dias*, 859 S.W.2d 835 (Mo.App.1993), for the proposition that an expert witness cannot be cross-examined concerning board certification examination failures. There, the defendant-physician testified as an expert witness. *Id.* at 838. The trial court excluded evidence that the physician had failed board certification and licensing examinations. *Id.* In holding that the trial court did not abuse its discretion in excluding the evidence, the court noted that "the defendant did not open himself to cross examination about failed examinations." *Id.* at 839–840.

By contrast, appellants opened their expert, Dr. DeSantis, to such cross-examination. Appellants presented two expert witnesses to establish that the defendant breached the standard of care. In establishing the credentials of Dr. DeSantis, appellants' attorney specifically addressed the following issues on direct examination:

Q: Have you been board certified by the American Board of Surgeons in surgery since 1970?

A: By the American Board of Surgeons, yes.

Q: What exactly did you do to get that? Tell us a little bit about that.

A: Well, the requirements for board certification are finishing an approved residency, getting the letter of recommendation from your chief of surgery, and sitting for a written test and on oral test.

Q: And did you pass those successfully?

A: Yes, sir.

Q: Was there a critical care board existing at that time?

A: No, there was not.

Q: Have you also been certified in advanced trauma and life support?

A: Yes, sir.

A short while later, counsel returned to critical care credentials by asking:

Q: Do you belong to the Society of Critical Care?

A: Yes, sir.

There was no further explanation concerning membership in the Society of Critical Care. On cross-examination, the following questioning took place by respondents' counsel:

Q: And it's my understanding that you're a general surgeon; is that correct?

A: That's correct.

Q: You're not a board certified vascular surgeon?

A: No. When I was training they didn't have the boards in vascular surgery. I never applied for the boards because the volume of my vascular surgery was insufficient. I think they require 100 cases a year.

Q: So you weren't even eligible to qualify for the Board of Vascular Surgery?

A: No, sir.

Q: And with regard to your credentials, it's my understanding that you did attempt to take the critical care boards but failed that examination; is that correct?

A: I took the test as a lark about five years ago knowing it wouldn't impact on my ability to practice medicine in the critical care area.

Q: You took the case, the test, as a lark?

A: Yes.

Q: And you failed it?

A: Yes.

Q: And you have no intention of taking it again, I gather?

A: No.

These quoted portions of the transcript clearly show that the appellants opened the door to this line of questioning on direct examination. The appellants put Dr. DeSantis' critical care credentials in issue by: 1) implying he is not board certi-

fied in critical care *only* because the board examination was not available, and 2) eliciting testimony of his membership in the "Society of Critical Care" without further follow-up (similar to that concerning the American Board of Surgeons) to explain what that membership really is about. Only from cross-examination do we know that the board examinations *in critical care* became available to Dr. DeSantis and that he failed.

The trial court did not abuse its discretion in light of the facts and testimony of this case. Point denied.

### III.

 Appellants' second point is that the trial court erred in admitting into evidence the fourteen-page curriculum vitae of defendants' expert. Appellants' attorney objected on the grounds that "99 percent of it's irrelevant. Also hearsay." On appeal, however, appellants argue only that that the curriculum vitae was cumulative evidence. "A party is not permitted to advance on appeal an objection different from that stated at trial." *McHaffie v. Bunch*, 891 S.W.2d 822, 830 (Mo. banc 1995) (citation omitted). Accordingly, the relevancy and hearsay issues have been abandoned and the cumulative evidence issue will be reviewed for plain error. The trial court will be reversed only if we find that a "manifest injustice or miscarriage of justice has resulted." *Rule 84.13(c)*.

 "Even if evidence is cumulative, that alone is not sufficient to exclude its admission." *State v. Smith*, 726 S.W.2d 418, 421 (Mo.App.1987) (citation omitted). An expert's qualifications are a proper consideration for the jury in deciding how much weight to give to that expert's testimony. *See Missouri Pipeline Co. v. Wilmes*, 898 S.W.2d 682, 687 (Mo.App. 1995) (stating that the extent of an expert's experience and training goes to the weight of his/her testimony). No manifest injustice or miscarriage of justice resulted from admission of the curriculum vitae.

■ Appellants also attempt to assert error under this point in allowing respondents' counsel to draw an adverse inference during closing argument from appellants' failure to offer their experts' curriculum vitaes and that the size of the respondents' expert's curriculum vitae indicated expertise and trustworthiness. The relevant portion of the argument went as follows:

> Respondents' counsel: As it relates to Dr. Pingleton, she is a very wise and learned individual. I went through her CV and actually marked it and put it into evidence. It was this thick. Mr. Picket never at one point in time ever put the credentials of –
>
> Appellants' Counsel: Your Honor, I object. That's inappropriate argument. That's not arguing evidence. It was equally available to him. That's inappropriate argument.
>
> The Court: Overruled. Let's proceed.
>
> Respondents' Counsel: Mr. Picket never put into evidence the CVs or the resumes of his doctors. Ask yourself why. Ask yourself why.

Counsel on both sides of the bar are permitted wide latitude and discretion in referring to evidence and arguing inferences during closing argument. *Moore v. Missouri Pacific R. Co.*, 825 S.W.2d 839, 844 (Mo. banc 1992). Here, respondents' counsel's reference during closing argument concerning the curriculum vitae was brief and not the major theme of the argument. The reference was made from properly admitted evidence. Point denied.

### IV.

■ Appellants' third point is that the trial court erred in allowing respondents' counsel, during closing argument, to state that Dr. Waxman was not negligent and for the jury to find negligence "is to say that my client killed this woman." Appellants objected to this statement because the word "killed" invoked a criminal law standard of intent into a negligence case.

■ We review the trial court's ruling in closing argument for an abuse of discretion. *Moore*, 825 S.W.2d at 844. "[C]ounsel is traditionally given wide latitude to suggest inferences from the evidence on closing argument." *Id.* (citation omitted). This is so "even though the inferences drawn are illogical or erroneous." *Id.* (citation omitted).

It is important to note that appellants' attorney first used a derivative of the word "kill" in his opening argument when he stated:

> But if in fact you create the complication that is known to occur, then you must do something about it in a timely fashion in order to avoid the creation to help her you end up killing her [sic]. That's what happened in this case.

This lawsuit involved an allegation by appellants that Dr. Waxman's negligence was the direct and proximate cause of Mrs. Nelson's death. Appellants' counsel opened the door by using the word "killing" in his opening argument and respondents' counsel was within the wide latitude afforded him during closing argument to say that his client was not negligent and did not kill Mrs. Nelson. The trial court did not abuse its discretion in permitting this argument. No issue has been raised concerning any error in the actual instructions given by the trial court to the jury. Point denied.

### V.

■ Appellants' fourth point is that the trial court erred in allowing cross-examination of one of their experts concerning the length of time between Mrs. Nelson's death and that expert's involvement in the case. Appellants failed to object after respondents' counsel asked Dr. Brown, appellants' expert, when he was contacted with regard to this case. Appellants claim that the point is nonetheless preserved for appeal because an objection would have been futile in light of an overruling to a similar objection made during opening ar-

gument. Appellants cite no authority for this proposition and the argument is without merit. Our review is for plain error and we will reverse the trial court only if we find that a "manifest injustice or miscarriage of justice has resulted." *Rule 84.13(c)*.

■■■ Appellants argue the question was irrelevant and only served to confuse and mislead the jury. Even if the question was irrelevant, "[s]imply asking an irrelevant question does not merit reversal." *Carlyle v. Lai*, 783 S.W.2d 925, 928 (Mo. App.1989). Prejudice must also be shown. *Id.*

Appellants also argue that asking when an expert witness was contacted or hired constitutes reversible error. In *Carlyle v. Lai*, the court of appeals held it was reversible error to show plaintiff hired an attorney to sue just fifteen days after her son's death. The court stated this was an improper attempt to portray her as greedy. "Accessing the legal system is normally not to be discouraged and, exercising one's right to utilize the legal system within established rules and procedures should normally not be used to discredit a litigant with a jury." *Id.* at 929. Appellants argue the question in this case drew the negative inference that either appellants and their counsel did not care all that much, or that it took them five years to find an expert witness who would support their claims. According to appellants, this is but a subtle variation of the improper question in *Carlyle*.

We simply disagree. Unlike *Carlyle*, this question did not attempt to discredit appellants for exercising rights fundamental to or granted by the legal system. Although this evidence's persuasiveness may be dubious, because the expert testified solely from charts and reports, no prejudice has been shown. Point denied.

### VI.

■■■ Appellants' fifth point is that the trial court erred in allowing respon-

dents' counsel to state during opening argument that he expected to use the deposition testimony of one of appellants' expert witnesses. Appellant continues to argue that there was no intent to actually use that testimony at that, or any other, time. We review this point also for abuse of discretion. *Shoemaker v. Ekunno*, 960 S.W.2d 527, 530 (Mo.App.1998).

During opening argument, respondents' counsel stated that he deposed a Dr. Jerry Green, one of appellants' experts, whose testimony would be that Dr. Waxman had not breached the standard of care. Appellants' counsel objected and a bench conference was held. Appellants' counsel noted that if this testimony was introduced it would open up the issue of negligence concerning a previous defendant (Dr. Brook) about whom respondents' counsel had filed a motion in limine to exclude such references. Appellants argue that respondents' counsel knew that even if only part of Dr. Green's testimony was introduced, it would open the door to testimony about Dr. Brook which respondents did not want admitted. Appellants thus infer that respondents never intended to introduce any of Dr. Green's testimony. Instead, appellants posit that respondents intended what they accomplished: tell the jury that one of appellants' experts was willing to testify against the appellants and then leave the jury wondering why appellants did not call that expert as their witness.

We, however, are unable to read respondents' counsel's mind as to his actual trial strategy. At the time the objection was made, the trial court also had no way to know respondents' trial strategy. During respondents' closing argument, counsel stated: "There have been some time constraints in this case. I advised you that you would hear from a Dr. Henry and Dr. Green. Through the timing issues, through no fault of any counsel, those individuals did not get to testify...."

■■■ No rule requires that witnesses mentioned in opening statement must be

presented to the jury. Certainly appellants could have noted in closing argument that respondents promised a witness but did not present that witness.

■ "References during opening statement to arguably admissible evidence made in good faith with a reasonable expectation that the evidence will be produced are not grounds for reversal." *White v. State*, 939 S.W.2d 887, 902 (Mo. banc 1997). Appellants' argument has not established that respondents acted in bad faith, especially where statements in the record could also be read to provide alternate good faith reasons for not calling witnesses referred to in opening statements.

Additionally, in overruling appellants' objection during opening statement, the trial judge stated: "If it becomes necessary after trial, this is something we will look at again." Appellants, however, did not request any such relief before jury deliberations, when the trial court might have taken curative action if any was needed.

The alleged error as preserved can only be judged at the time the objection was made and not in hindsight. Based on the information available to the trial judge when the objection was made, no error occurred. Thereafter no showing of manifest injustice or a miscarriage of justice has been made to justify plain error relief at the close of the evidence. Point denied.

## VII.

Because we find no error in any of the first five points, we need not address the appellants' final point concerning the cumulative effect of the alleged errors. *See generally Shepherd v. State*, 529 S.W.2d 943, 948 (Mo.App.1975) ("Any number of non-errors cannot add up to an error."). The judgment is affirmed.

All concur.