David J. WHELAN, Appellant,

v.

**MISSOURI PUBLIC SERVICE, ENERGY ONE, a Division of Aquila, Inc., Respondent.**

No. WD 64002.

Missouri Court of Appeals, Western District.

March 29, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 2005.

---

James F. Crews, Tipton, MO, for appellant.

Kirsten A. Byrd, Kansas City, MO, for respondent.

Before: ROBERT G. ULRICH, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

**ROBERT G. ULRICH, P.J.**

David Whelan appeals the judgment of the trial court following jury trial awarding him $50,000 in his personal injury action against Missouri Public Service, Energy One. Missouri Public Service admitted liability. Mr. Whelan claims that the trial court erred in (1) excluding the deposition testimony of his treating physician and (2) admitting evidence of his high school grades, both questions applicable to the issue of damages sustained by Mr. Whelan. The portion of the trial court's judgment determining liability is affirmed, and the portion of the judgment awarding damages is reversed. The case is remanded for a new trial on the issue of damages.

In this action, Mr. Whelan alleged that he was electrocuted due to the negligence of Missouri Public Service and that as a result of the electrocution, he suffered brain injuries and psychological trauma. At the close of plaintiff's evidence, Missouri Public Service admitted liability, and directed verdict was entered accordingly. The only remaining issue for the jury, therefore, was damages. The jury assessed damages at $50,000. This appeal by Mr. Whelan followed.

### Standard of Review

Mr. Whelan's two points on appeal involve the admission or exclusion of evidence. The admission or exclusion of evidence lies within the sound discretion of the trial court, and the trial court's ruling will not be disturbed absent abuse of discretion. *Nelson v. Waxman,* 9 S.W.3d 601, 603 (Mo. banc 2000). "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before it and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Id.* at 604 (quoting *Oldaker v. Peters,* 817 S.W.2d

245, 250 (Mo. banc 1991)). The trial court's evidentiary ruling will be affirmed unless there is a substantial or glaring injustice. *Uxa ex rel. Uxa v. Marconi,* 128 S.W.3d 121, 130 (Mo.App. E.D.2003).

The primary criterion in the admission of evidence is relevancy. *Guess v. Escobar,* 26 S.W.3d 235, 242 (Mo.App. W.D.2000). To be admissible, evidence must be logically and legally relevant. *Id.* Evidence is logically relevant if it tends to prove or disprove a fact in issue or corroborates other evidence. *Id.* "Legal relevance involves a process through which the probative value of the evidence (its usefulness) is weighed against the dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time or needless presentation of cumulative evidence (the cost of evidence)." *Id.* (quoting *Olinger v. Gen. Heating & Cooling Co.,* 896 S.W.2d 43, 48 (Mo.App. W.D. 1994)).

## Exclusion of Deposition Testimony of Treating Physician

In Mr. Whelan's first point on appeal, he claims that the trial court abused its discretion in excluding the deposition testimony of his former treating psychiatrist, Dr. Andrew Resnik. In his deposition, Dr. Resnik testified that he treated Mr. Whelan for approximately two years from January 2000 for symptoms of anxiety and depression. Dr. Resnik's treatment focused primarily on medication management. Dr. Resnik also testified that he did not have an opinion as to the cause of Mr. Whelan's symptoms. Missouri Public Service objected to the introduction of the deposition arguing that because Dr. Resnik did not have an opinion regarding whether Mr. Whelan's symptoms were a result of the electrical shock, his testimony was irrelevant and lacked foundation. The trial court sustained the objection.

An expert witness is an individual "engaged by a party in anticipation of litigation in order to testify about scientific or technical matters." *Kehr v. Knapp,* 136 S.W.3d 118, 123 (Mo.App. E.D.2004)(quoting *DeLaporte v. Robey Bldg. Supply, Inc.,* 812 S.W.2d 526, 535 (Mo.App. E.D.1991)). Typically, an expert has no knowledge about the case or facts in controversy prior to being retained and instead gathers facts about the controversy through documents, materials, and other information provided to him by the attorney who contacted him. *Id.* (quoting *State ex rel. Tracy v. Dandurand,* 30 S.W.3d 831, 834 (Mo. banc 2000)).

A treating physician, however, has knowledge of the facts of the case and is not retained solely for litigation purposes. *Id.* A treating physician is first and foremost a fact witness as opposed to an expert witness. *Brandt v. Med. Def. Assocs.,* 856 S.W.2d 667, 673 (Mo. banc 1993). "In personal injury litigation, the treating physician is likely to be the principal fact witness on the issue of damages." *Id.* A treating physician is often assumed to be an expert witness because he uses medical training and skill in diagnosing and treating the patient and in describing to the jury the plaintiff's condition and treatment. *Id.* A treating physician only functions as an expert witness, however, where one or both parties ask the witness to use the basic facts to draw conclusions and express opinions on relevant medical issues. *Id.*

In this case, the scope of Dr. Resnik's testimony was limited to discussion of Mr. Whelan's care and treatment over a two-year period from January 2000. While Dr. Resnik was asked his opinion regarding whether Mr. Whelan's symptoms were caused by the electrical shock, Dr. Resnik did not have an opinion on the issue. Dr. Resnik, however, treated Mr. Whelan for

psychiatric maladies that are inclusive of those manifested as posttraumatic stress disorder. Mr. Whelan presented other evidence in the form of expert witness testimony linking his symptoms and injuries treated by Dr. Resnik to the electrical shock. Dr. Kenneth Mace, a clinical psychologist, testified that based on Mr. Whelan's symptoms of depression and anxiety, he diagnosed Mr. Whelan with posttraumatic stress disorder. Dr. Mace also opined that Mr. Whelan's posttraumatic stress disorder was caused by the electrical shock. In attempting to introduce Dr. Resnik's deposition at trial, Mr. Whelan's attorney specifically stated that he was not offering the witness as an expert. Instead, Dr. Resnik was a fact witness testifying about his care and treatment of Mr. Whelan. Such testimony was relevant to the issue of damages. Exclusion of Dr. Resnik's deposition testimony was prejudicial to Mr. Whelan to the extent that Dr. Resnik's care and treatment of Mr. Whelan impacts damages. The judgment of the trial court is, therefore, reversed, and the case is remanded for a new trial on the issue of damages.

### Admission of Mr. Whelan's High School Transcript

■ In his second point on appeal, Mr. Whelan claims that the trial court abused its discretion in admitting his high school transcript. He contends that his high school grades were not relevant to any issue in the case and only confused and misled the jury. Because the issue is likely to recur in a new trial, it is addressed briefly to provide guidance.

In his petition, Mr. Whelan alleged that as a result of the electrical shock, he suffered severe injuries to his brain and central nervous system as well as psychological trauma. He further alleged that as a result of these injuries, he is no longer able to work as a carpenter and has difficulty doing any type of work. At trial, Mr. Whelan testified that he was also unable to complete vocational training to pursue other work as a result of the shock and injuries he sustained. His expert psychologist testified that as a result of the electrical shock, Mr. Whelan had problems with concentration and focus adversely affecting his ability to pursue education or work. On cross-examination, Mr. Whelan testified that he was an "average" student in school.

In response to this evidence, Missouri Public Service presented evidence that Mr. Whelan had a history of minimal achievement in his educational endeavors. This evidence included Mr. Whelan's high school transcript that showed he primarily received Cs and Ds in high school, and his class rank upon completion of high school was 80th out of 81 students.

Mr. Whelan raised the issue of his ability to complete vocational training. As support for his claim of damages, Mr. Whelan offered evidence that he was unable to concentrate, learn, and complete such training and obtain a new job due to the electrical shock and resulting injuries. Evidence of his ability to concentrate and learn before he sustained the injuries for which he initiated the action and for which he claimed a resultant diminished capacity was relevant. His high school grades constitute an academic record of several years that are an indicator, although neither comprehensive nor conclusive, reflecting on his learning ability while attending high school, a period prior to his injuries. The evidence was, therefore, logically and legally relevant. The point is denied.

The portion of the trial court's judgment determining liability is affirmed, and the portion of the judgment awarding damages

is reversed. The case is remanded for a new trial on the issue of damages.

SMART and ELLIS, JJ., concur.