Bob RATCLIFF, Appellant,

v.

**SPRINT MISSOURI, INC. d/b/a Sprint United Telephone, Respondent.**

No. WD 64840.

Missouri Court of Appeals,
Western District.

April 1, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 27, 2008.

Application for Transfer Denied Sept. 30, 2008.

John W. Roarke, St. Louis, MO, for appellant.

Paul L. Wickens, Kansas City, MO, for respondent.

Before BRECKENRIDGE, P.J.,[1]
NEWTON and HOLLIGER, JJ.

PATRICIA BRECKENRIDGE, Judge.

Bob Ratcliff appeals the judgment in favor of Sprint Missouri, Inc., d/b/a Sprint United Telephone, in his premises liability action. Mr. Ratcliff raises ten points on appeal challenging the jury's verdict, the trial court's refusal to allow him to amend his pleadings, the trial court's admission or exclusion of certain evidence, and the trial court's refusal to grant a protective order.[2] The judgment of the trial court is affirmed.

### Factual and Procedural Background

This case arose out of an accident that occurred on March 4, 1997, in the Truman Building on the Capitol Complex in Jefferson City. Mr. Ratcliff was working in the building as a communications operator for the Capitol Police. Sprint's service technician, Jerry Bondurant, was installing a new phone line/number in the Capitol Police dispatch office. The Truman Building has a sub-floor in which run phone cables, electrical cables, coaxial cables, and plumbing. The sub-floor is covered by carpet and, under the carpet, sub-floor panels can be removed to reveal the cables. To install the new phone line, Mr. Bondurant had removed a sub-floor panel revealing an opening 24 inches by 24 inches and 5 1/2 inches deep.

In his petition for negligence, Mr. Ratcliff claimed he stepped into the sub-floor opening and injured his left ankle. He alleged that Sprint was negligent in failing to barricade or otherwise prevent him from contact with the open hole and to

1. Breckenridge, J. was a member of this court at the time the case was argued and submitted. She was subsequently appointed a judge of the Supreme Court of Missouri but has been reassigned to this court as a special judge for the purpose of disposition of this case.

2. Mr. Ratcliff's points on appeal are not necessarily addressed in the order presented.

warn him of the dangerous condition, and in failing to properly train and supervise its employee. He further alleged that as a result of Sprint's negligence, he sustained a left ankle injury, nervousness, pain and anxiety of body and mind, and emotional upset, all of which are permanent, disabling, and progressive. Finally, the petition included a loss of consortium claim by Mr. Ratcliff's wife, which she voluntarily dismissed without prejudice prior to trial.

At trial, Mr. Ratcliff testified that he did not see Mr. Bondurant or the opening in the sub-floor before the accident. He stated that as he walked out of the dispatch office to go on his break, his left foot fell through the hole, which was covered by a piece of carpeting. According to Mr. Ratcliff, Mr. Bondurant was not sitting in the opening when he fell in it, but was across the room. Mr. Ratcliff testified that, as a result of the accident, he suffers "engulfing" physical pain, is unemployable, and is bound to a wheelchair. He also explained that he is no longer able to do the activities that he enjoys such as cooking, playing the piano and organ, outdoor activities, visiting his family, or working on his home.

Sprint defended the suit by claiming that the floor opening was an open and obvious condition, it was properly attended and warned of, and that Mr. Ratcliff failed to use ordinary care to keep a careful lookout. Specifically, Mr. Bondurant testified that he was working 10 to 12 feet away from Mr. Ratcliff's workstation and that there were no obstructions between him and Mr. Ratcliff. When the accident occurred, Mr. Bondurant testified he was splicing wires, while he was sitting on the edge of the floor opening with his feet in the opening. Mr. Ratcliff walked toward Mr. Bondurant and the floor opening and stepped in and out of the opening, brushing up against Mr. Bondurant. Mr. Bondurant's testimony was corroborated by the testimony of two other witnesses, co-workers of Mr. Ratcliff's. Maureen Hill testified that, before the accident, she was easily able to see Mr. Bondurant, who was a "big fellow," sitting in the floor opening as he was working. She also testified that, when she looked right after Mr. Ratcliff stepped in the opening, she saw Mr. Bondurant either standing or sitting by the opening. Glen Carey also testified that, before the accident, he could easily see Mr. Bondurant working in the floor opening. He further stated that, when Mr. Ratcliff stepped into the hole, Mr. Bondurant was working in the hole, either sitting with his feet in it or kneeling next to it.

Sprint also offered evidence that Mr. Ratcliff's condition was caused by a prior accident; specifically, that Mr. Ratcliff suffered a severe grade-three left ankle sprain while camping in southern Missouri six months earlier on August 19, 1996. Finally, Sprint presented evidence that Mr. Ratcliff suffered from factitious disorder, a mental disorder where a person will intentionally produce physical symptoms to assume the sick or invalid role.

The case was submitted to the jury only on Mr. Ratcliff's claim that Sprint negligently failed to attend, barricade, or warn of the floor opening. His claim for negligent training and supervision was withdrawn. After a three-week trial and only two hours of deliberation, the jury returned its verdict finding Sprint 0% and Mr. Ratcliff 100% at fault. Accordingly, the trial court entered judgment in favor of Sprint. This appeal by Mr. Ratcliff followed.

### Sufficiency of Evidence
### Claim Is Meritless

In the first point addressed in this appeal, Mr. Ratcliff contends that the trial court erred in entering judgment against him and in denying his motion for judg-

ment notwithstanding the verdict or for a new trial. He claims that the evidence was insufficient to support the verdict in favor of Sprint. Specifically, he asserts that the evidence substantiated all of the elements of his cause of action but not the affirmative defenses of Sprint; therefore, judgment should have been entered in his favor.

In reviewing a jury verdict in a civil case, the appellate court does not " 'determine the credibility of the witnesses, resolve conflicts in testimony, or weigh the evidence.' " *Brandt v. Csaki*, 937 S.W.2d 268, 273 (Mo.App. W.D.1996) (quoting *Powell v. Norman Lines, Inc.*, 674 S.W.2d 191, 197 (Mo.App. E.D.1984)). " 'Weighing evidence remains a trial court function, and an appellate court cannot rule on the weight of the evidence in a jury tried case.' " *Williams v. Jacobs*, 972 S.W.2d 334, 346 (Mo.App. W.D.1998) (quoting *Johnson v. Creative Restaurant Mgmt.*, 904 S.W.2d 455, 460 (Mo.App. W.D.1995)). It is within the jury's prerogative "to find against the party with the burden of proof, even if that party's evidence is uncontradicted and unimpeached." *Brandt*, 937 S.W.2d at 273. In this case, Sprint did not have to offer any evidence to support a verdict in its favor. Because Mr. Ratcliff, and not Sprint, had the burden of proof, his sufficiency of the evidence claim is without merit. The point is denied.

### Trial Court Did Not Err in Denying Motion to Amend Petition

Next, Mr. Ratcliff claims that the trial court erred in denying his motion to amend his petition, during trial, to include (1) a negligence per se count for violation of the Occupational Safety and Health Act (OSHA) and the American National Standards Institute (ANSI) standards and (2) evidence of aggravation of a pre-existing condition. He contends that such amendment would not have prejudiced Sprint because it had notice of the issues and had actively litigated them for three years in this case.

"Pleadings present, define, and isolate the issues, so that the trial court and all parties have notice of the issues." *Norman v. Wright*, 100 S.W.3d 783, 786 (Mo. banc 2003). Rule 55.33(b) permits amendment of the pleadings to conform to the evidence. *Rombach v. Rombach*, 867 S.W.2d 500, 503 (Mo. banc 1993). "[T]he rule gives direction to the trial court both in situations where no objection is made to evidence of unpleaded facts or claims and in situations where objection is made." *Id.* If no objection is made to the evidence, and the evidence raises an issue that is tried by the implied or express consent of the parties, the issue shall be treated as if it were alleged, and a motion to amend may be made, even after judgment. *Id.*; Rule 55.33(b). "The only discretion allowed the trial court in such situation is in determining whether the issue was tried by 'implied consent' of the parties." *Rombach*, 867 S.W.2d at 503. "If so, the pleadings 'shall' be treated as if the issues had been properly raised." *Id.*; Rule 55.33(b).

Where an objection is made to evidence of unpleaded facts or claims, however, the trial court has substantial discretion in determining whether to allow the pleadings to be amended. *Rombach*, 867 S.W.2d at 504. If an objection is made, the trial court may allow the pleadings to be amended and " 'shall do so freely when the presentation of the merits of the action will be subserved thereby' " and the objecting party fails to show prejudice. *Id.* (quoting Rule 55.33(b)).

Mr. Ratcliff first claims that the trial court erred in denying his motion to amend his petition, during trial, to include

a negligence per se claim for violation of the OSHA and ANSI standards. Mr. Ratcliff argues that an amendment of his petition would not have prejudiced Sprint because it was on notice of the claim and had actively litigated the issue since the filing of the lawsuit in 2002.

Contrary to Mr. Ratcliff's argument, Sprint did not impliedly or expressly consent to try a negligence per se claim. In fact, it objected to the introduction of OSHA and ANSI standards on the ground that Mr. Ratcliff's petition did not include a count for negligence per se. The trial court sustained the objection, but Mr. Ratcliff's expert was allowed to generally discuss the standards as a guide for determining the standard of care for Mr. Ratcliff's common law negligence claim.

Mr. Ratcliff had ample opportunity during the two plus years between the filing of the lawsuit and trial to include a claim of negligence per se for violation of the OSHA and ANSI standards concerning guarding floor openings. Yet, Mr. Ratcliff did not attempt to amend his pleadings to include a claim of negligence per se until the second week of trial. Allowing Mr. Ratcliff to amend his pleadings, during trial, to assert a new theory of recovery would have caused unnecessary delay and great difficulty to Sprint. *See Steenrod v. Klipsch Hauling Co.*, 789 S.W.2d 158, 166 (Mo.App. E.D.1990) (trial court did not abuse its discretion in refusing to allow plaintiff in negligent entrustment action to amend petition on first day of trial to include a claim of negligence per se where plaintiff had sufficient opportunity to conduct discovery and include such allegation, and amendment would have caused unnecessary delay and resulting hardship to defendant). The trial court did not abuse its discretion in refusing to allow Mr. Ratcliff to amend his pleadings to include a negligence per se claim.

Next, Mr. Ratcliff challenges the denial of his motion to amend his pleadings during trial to include an allegation of aggravation of a preexisting condition. A plaintiff may recover damages for aggravation of a preexisting condition caused by the negligent act of the defendant. *Miller v. Gulf, Mobile & Ohio R.R. Co.*, 386 S.W.2d 97, 102 (Mo.1964); *Schide v. Gottschick*, 329 Mo. 64, 43 S.W.2d 777, 782 (1931). Here, the jury found that Mr. Ratcliff was 100 % at fault and that Sprint was not liable to Mr. Ratcliff. Damages were not assessed. Therefore, even assuming *arguendo* that it was error to deny Mr. Ratcliff's motion to amend his pleadings, the error was harmless. *See Embree v. Norfolk & W. Ry. Co.*, 907 S.W.2d 319, 326–27 (Mo.App. E.D.1995) (even assuming that trial court erred in denying instruction regarding damages for aggravation of preexisting condition, error was harmless where jury found no liability on substantive claim). The point is denied.

### Admission and Exclusion of Evidence

Several of Mr. Ratcliff's points on appeal challenge the trial court's admission or exclusion of evidence. The trial court has considerable discretion in admitting or excluding evidence, and its ruling will not be disturbed on appeal absent abuse of discretion. *Whelan v. Mo. Pub. Serv., Energy One*, 163 S.W.3d 459, 461 (Mo.App. W.D.2005). Abuse of discretion occurs when the trial court's ruling is " 'clearly against the logic of the circumstances before it and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.' " *Id.* at 461–62 (quoting *Nelson v. Waxman*, 9 S.W.3d 601, 603 (Mo. banc 2000)). Review of the exclusion of evidence is limited to determining whether the trial court abused its discretion, not whether the evidence

was, in fact, admissible. *Gingerich v. Kline,* 75 S.W.3d 776, 780 (Mo.App. W.D. 2002). The trial court's evidentiary ruling will be affirmed on appeal unless there is substantial or glaring injustice. *Whelan,* 163 S.W.3d at 462.

The primary factor in the admission of evidence is relevancy. *Id.* "To be admissible, evidence must be logically and legally relevant." *Id.* "Evidence is logically relevant if it tends to prove or disprove a fact at issue or corroborates other evidence." *Id.* " 'Legal relevance involves a process through which the probative value of the evidence (its usefulness) is weighed against the dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time or needless presentation of cumulative evidence (the cost of evidence).' " *Id.* (quoting *Guess v. Escobar,* 26 S.W.3d 235, 242 (Mo. App. W.D.2000)).

## A. Trial Court Did Not Abuse Discretion in Admitting Evidence of Sexual Orientation

First, Mr. Ratcliff contends that the trial court erred in overruling his objection to and admitting evidence of his sexual orientation. He claims that evidence of his sexual orientation was irrelevant, inflammatory, and embarrassing and that, even if the evidence did have probative value, the resulting prejudice substantially outweighed it. Sprint responds that it offered the evidence to rebut Mr. Ratcliff's reason for leaving his employment at Missouri Capitol Police.

At trial, Mr. Ratcliff testified and offered employment records from Missouri Capitol Police concerning his successful performance reviews during his ten-year employment. He also testified that he had planned to continue working at Capitol Police for another 25 years until he retired but that he ultimately had to give up his job because of the effects of the injury he sustained in the March 4, 1997 accident.

In response, Sprint presented an alternative explanation for Mr. Ratcliff's leaving his job. It offered evidence that Mr. Ratcliff planned on leaving his employment after his ten-year anniversary because he felt discriminated against because of his homosexuality. It introduced an excerpt from Mr. Ratcliff's diary wherein he wrote in July 1998, a year before leaving his employment, "Yes I am planning on leaving MCP at the end of March in 1999, but I just have to get there." In another excerpt in August 1998, Mr. Ratcliff wrote:

> I am sure Tom [ ] and [Maureen] have already figured it out. To[o] bad, because if I had just been treated a little better I would probably stay. People d[o] not stay where they are not wanted. There is also the issue about me being gay. I know that this has always been a thorn in their sides and they would welcome I'm sure to get the fag out of their office.

Finally, Sprint offered evidence that Mr. Ratcliff's wife went to Mr. Ratcliff's supervisor in September 1991 and accused Capitol Police of trying to get rid of Mr. Ratcliff because of his sexual orientation.

Based on his work record and his alleged intent to stay employed at Capitol Police for an additional 20 years until retirement, Mr. Ratcliff claimed, through the testimony of his expert economist, $786,769 in lost earnings capacity related to quitting his employment because of his injury. Mr. Ratcliff injected into the case the reason he left his employment at the Missouri Capitol Police. And such reason was hardly a "minor, hypothetical point at the periphery of the dispute," as argued by Mr. Ratcliff. Evidence that Mr. Ratcliff believed Capitol Police was trying to force him out because of his homosexuality was

relevant as an alternative reason for leaving his employment. A party cannot complain on appeal of any alleged error in which, by his or her own conduct at trial, he or she joined in or acquiesced to. *Johnson v. Moore*, 931 S.W.2d 191, 195 (Mo.App. E.D.1996). Furthermore, evidence of Mr. Ratcliff's homosexuality was limited to providing an alternative explanation for his leaving his employment. The probative value of the evidence outweighed any prejudicial effect of it. Thus, the trial court did not abuse its discretion in admitting the evidence. The point is denied.

### B. Trial Court Did Not Abuse Discretion in Admitting Evidence of Workers' Compensation Claim

Next, Mr. Ratcliff claims that the trial court erred in overruling his objection to and admitting evidence of his workers' compensation claim. He asserts that such evidence was inadmissible evidence of collateral source payment and that it prejudicially injected a false and misleading issue into the case.

■■■ An exception to the general rule of inadmissibility of collateral source payment is where a plaintiff voluntarily injects his financial condition into the lawsuit. *Washington by Washington v. Barnes Hosp.*, 897 S.W.2d 611, 621 (Mo. banc 1995); *Moore v. Mo. Pac. R.R. Co.*, 825 S.W.2d 839, 842 (Mo. banc 1992). " 'Whether the plaintiff injects his financial condition through inadvertence or purposefully, it is the raising of plaintiff's financial condition with the jury that permits the opposing party to attack his claims of financial distress by showing that other financial assistance was available.' " *Washington*, 897 S.W.2d at 621 (quoting *Moore*, 825 S.W.2d at 843). Thus, if the plaintiff makes the jury aware of his financial condition, for example, in connection with a failure to obtain treatment or in an attempt to obtain sympathy, the defendant is not required to leave such evidence unchallenged. *Moore*, 825 S.W.2d at 842–43. " 'The barriers which have been created against the admission of otherwise relevant evidence because of its prejudicial effect do not extend to the affirmative volunteering by a plaintiff of testimony which breaks into this restrictive area.' " *Id.* at 842 (quoting *Gladden v. P. Henderson & Co.*, 385 F.2d 480, 483–84 (3rd Cir.1967)).

■■■ Prior to trial, Mr. Ratcliff filed a motion in limine to exclude evidence of collateral source payments, and the motion was granted. During direct examination of Mr. Ratcliff by his counsel, the following question and answer occurred:

Q: Okay. And why had you not gone to your family physician up until this point?

A: Because I wasn't given ... I was unable to afford that option.

The trial court ruled that Mr. Ratcliff injected the issue of his financial condition into the case. Over Mr. Ratcliff's objection, the court permitted Sprint to elicit the following limited evidence from Mr. Ratcliff's economist:

Q: Mr. Ward, my question to you was, none of your calculations include any consideration of amounts that Mr. Ratcliff has already received for his injuries?

A: That's correct.

The trial court also permitted Sprint to recall Mr. Ratcliff in rebuttal and elicit the following:

Q: Mr. Ratcliff, it is true, is it not, that in June of 2002 you settled your Worker's Compensation claim and Second Injury Fund claim for a lump sum?

A: Yes, sir.

Q: That included your medical expenses, correct?

A: Yes.

The trial court did not err in admitting evidence of Mr. Ratcliff's workers' compensation claim. Mr. Ratcliff injected his financial condition into this case during direct examination by his attorney regarding his failure to obtain medical treatment because he couldn't "afford that option." When Mr. Ratcliff made the jury aware of his financial condition, Sprint was permitted to attack his claim of financial distress with evidence of his workers' compensation claim settlement. *Lange v. Mo. Pac. R.R. Co.,* 703 F.2d 322, 323–24 (8th Cir. 1983) (where plaintiff testified on direct examination that he was required to return to work immediately after back surgery because he had no savings or disability income, cross-examination of plaintiff regarding his settlement of a workers' compensation claim was permissible). The point is denied.

## C. Trial Court Did Not Abuse Discretion in Excluding Incident Report; Point On Appeal Regarding Diary is Dismissed

The next two points addressed concern attorney-client and work product privileges. Mr. Ratcliff claims that the trial court abused its discretion in denying him discovery of Sprint's Incident Report. He asserts that the report was relevant in that it was the first report created by Sprint for the purposes of memorializing the event and that it was not subject to any privilege. In a separate point, Mr. Ratcliff claims that the trial court erred in compelling production of his diary over his objection and admitting evidence contained in it at trial. He asserts that the diary was privileged and protected by the attorney-client and work product privileges because it was communication between attorney and client and was prepared at the direction of counsel in preparation for litigation.

The trial court has broad discretion in administering the rules of discovery, and its ruling will be reviewed for abuse of discretion. *Igoe v. Dep't of Labor & Indus. Relations,* 210 S.W.3d 264, 267 (Mo.App. W.D.2006); *Hertz Corp. v. Raks Hospitality, Inc.,* 196 S.W.3d 536, 544 (Mo. App. E.D.2006). In reviewing the trial court's actions related to a response to a pre-trial discovery, the appellate court considers whether the challenged act, under the totality of the circumstances, has resulted in prejudice or unfair surprise. *Igoe,* 210 S.W.3d at 267; *Hertz,* 196 S.W.3d at 545.

Rule 56.01(b) governs the scope of discovery. Generally, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action...." Rule 56.01(b)(1). Under subdivision (b)(1), privileged matters are absolutely non-discoverable. *Id.; May Dep't Stores Co. v. Ryan,* 699 S.W.2d 134, 136, 137 (Mo.App. E.D.1985). The attorney-client privilege prohibits " 'the discovery of confidential communications, oral or written, between an attorney and his client with reference to ... litigation pending or contemplated.' " *State ex rel. Terminal R.R. Ass'n of St. Louis v. Flynn,* 363 Mo. 1065, 257 S.W.2d 69, 73 (Mo. banc 1953) (citation omitted). To be privileged, the purpose of a communication between an attorney and client must be to secure legal advice. *St. Louis Little Rock Hosp., Inc. v. Gaertner,* 682 S.W.2d 146, 150 (Mo.App. E.D.1984).

Another exception to the general discovery rule is the work product privilege. *State ex rel. Ford Motor Co. v. Westbrooke,* 151 S.W.3d 364, 367 (Mo. banc 2004). The work product privilege precludes discovery of materials created or commissioned by counsel in preparation for possible litigation and the "thoughts"

and "mental processes" of the attorney preparing the case. *Id.* (quoting *State ex rel. Polytech, Inc. v. Voorhees,* 895 S.W.2d 13, 14 (Mo. banc 1995)). Thus, the work product doctrine protects two types of information—" 'tangible work product (consisting of trial preparation documents such as written statements, briefs, and attorney memoranda) and intangible work product (consisting of an attorney's mental impressions, conclusions, opinions, and legal theories—sometimes called opinion work product).' " *Id.* (quoting *State ex rel. Atchison, Topeka & Santa Fe Ry. Co. v. O'Malley,* 898 S.W.2d 550, 552 (Mo. banc 1995)); *Edwards v. Mo. State Bd. of Chiropractic Examiners,* 85 S.W.3d 10, 26 (Mo.App. W.D.2002).

■ Tangible work product is protected by Rule 56.01(b)(3). Subject to the rule governing expert witnesses, Rule 56.01(b)(3) provides for the discovery of documents and tangible things

> prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and that the adverse party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Thus, to be protected from discovery, trial preparation materials must be (1) documents or tangible things, (2) prepared by or for a party or a representative of that party, (3) in anticipation of litigation or for trial. *Westbrooke,* 151 S.W.3d at 367; *Edwards,* 85 S.W.3d at 26. Such trial preparation materials may be discovered only if the party seeking discovery shows a substantial need for them in the preparation of the case and an inability to obtain the substantial equivalent of them without undue hardship. Rule 56.01(b)(3); *Edwards,* 85 S.W.3d at 26.

■ "Protection of intangible work product exists independently of Rule 56.01(b)(3)." *Westbrooke,* 151 S.W.3d at 367. Thus, unlike with tangible work product, a showing of substantial need does not require disclosure of intangible work product. *O'Malley,* 898 S.W.2d at 552. If a court orders discovery of trial preparation materials after the requisite showing is made under Rule 56.01(b)(3), it "shall protect against disclosure of the mental impressions, conclusion, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Rule 56.01(b)(3).

■ Mr. Ratcliff first claims that the trial court abused its discretion in denying him discovery of Sprint's Incident Report. He asserts that the report was relevant in that it was the first report created by Sprint for the purposes of memorializing the event and that it was not subject to any privilege.

■ The attorney-client privilege encompasses documents prepared by an employee at the direction of the employer for the purpose of obtaining the advice of an attorney or for use in prospective or pending litigation. *Flynn,* 257 S.W.2d at 73. Regarding documents prepared following an incident or accident,

> [a] statement concerning an accident obtained by an employer from his servant for the bona fide purpose of being later transmitted to the employer's attorney for advice, or to be used by the attorney in connection with pending or threatened litigation, is privileged, because it is part of the communication from the client to his counsel. The same is true of a statement by the accredited agent of a corporation, giving his ac-

count of an accident for use of counsel in pending or threatened litigation....

*Id.* (citation omitted). A communication made between an insured to his liability insurer during the course of an existing insured-insurer relationship is, likewise, privileged. *State ex rel. Cain v. Barker,* 540 S.W.2d 50, 53 (Mo. banc 1976); *May,* 699 S.W.2d at 136; *Gaertner,* 682 S.W.2d at 150. "Any communication between insured and insurer which relates to the former's duty to report incidents and the latter's duty to defend and to indemnify falls within the attorney-client privilege and is excluded from discovery under Rule 56.01(b)(1)." *May,* 699 S.W.2d at 136. "Thus, a report made by an employee to his employer concerning the details of an incident, which is transmitted to the employer's attorney or insurer, is within the confidential communication privilege and is not subject to discovery, absent a waiver." *Id.* at 136–37.

Here, the Sprint employee who prepared the Incident Report, a safety manager, testified in his deposition that he prepared the report on the day he was notified by Mr. Bondurant's supervisor, May 28, 1997, that the incident had occurred. He further testified that he prepared the report to provide the necessary paperwork to Sprint's insurance company and that he, in fact, did file the report with the insurance company. The Incident Report was, therefore, protected from discovery by the attorney-client privilege.

█ The Incident Report was further excluded from discovery by the work product privilege. Mr. Ratcliff argues that the Incident Report was not prepared in anticipation of litigation but was prepared and provided to Sprint's Safety Committee solely for accident prevention purposes; therefore, it was not work product and not protected from discovery. In making this argument, Mr. Ratcliff cites *St. Louis Lit-*

*tle Rock Hospital, Inc. v. Gaertner,* 682 S.W.2d 146 (Mo.App. E.D.1984). The incident report at issue in *Gaertner* was prepared as part of a computerized future loss prevention program and expressly stated that it was "NOT A NOTICE OF LOSS." 682 S.W.2d at 150; *May,* 699 S.W.2d at 138. Thus, the report was not work product because it was not made in anticipation of litigation. *Gaertner,* 682 S.W.2d at 150. Mr. Ratcliff points to no evidence that the Incident Report in this case was prepared in the ordinary course of Sprint's business for accident prevention purposes. Although he cites to Exhibits 90 and 94, safety manuals for the company, and alleges that Sprint has Safety Committees for the purpose of reviewing accidents and preventing future accidents, he failed to show that the Incident Report at issue was prepared as part of an accident prevention program or that it was submitted to or reviewed by a Safety Committee. To the contrary, the safety manager who prepared the report testified that he prepared the report for insurance purposes nearly three months after the incident occurred. Thus, the Incident Report was prepared in anticipation of litigation. " 'A report to a liability insurer can have no purpose other than use in potential litigation.' " *May,* 699 S.W.2d at 138 (citation omitted). *See also Lindberg v. Safeway Stores, Inc.,* 525 S.W.2d 571, 572 (Mo.App.1975) (referring to the "realities of the situation" in concluding that a report regarding a customer's fall in a business establishment prepared by an employee for his employer was made for use in case of litigation).

Because the report was prepared in anticipation of litigation, Mr. Ratcliff was required to show a substantial need for the report and an inability to obtain the substantial equivalent by other means for discovery of it. He did not make such showing. Mr. Ratcliff himself could and did

testify regarding the incident about which the report was prepared. Moreover, the Sprint employee who prepared the report was available and did testify at trial. Mr. Ratcliff did not demonstrate a need or an inability to obtain substantially equivalent evidence. *See May*, 699 S.W.2d at 137 (where plaintiff sought report concerning incident about which she herself could testify and no showing was made that person who prepared report was unavailable, plaintiff demonstrated neither a need nor an inability to obtain substantially equivalent evidence). The Incident Report was, therefore, protected from discovery by the work product privilege. The point is denied.

Next, Mr. Ratcliff claims that the trial court erred in compelling production of his diary over his objection and admitting evidence contained in it at trial. He asserts that the diary was privileged and protected by the attorney-client and work product privileges because it was communication between attorney and client and was prepared in anticipation of litigation. Specifically, Mr. Ratcliff argues that the diary was prepared at the direction of prior retained counsel for purposes of preparing for litigation and developing his case. In support of this claim, Mr. Ratcliff cites to the transcript where the trial court heard argument on the issue. The transcript reveals that Mr. Ratcliff's attorney argued to the trial court that the diary was protected by privilege and referred to a motion in limine and an affidavit of Mr. Ratcliff's prior attorney.

In response, Sprint argues that the diary was not protected by the attorney-client or work product privileges because it was not a communication between Mr. Ratcliff and his attorney and was not made in anticipation of litigation. It quotes a question and answer from Mr. Ratcliff's deposition wherein he testified that he wrote the diary to help himself work through his painful physical therapy sessions.

The party claiming that a privilege precludes discovery of a matter bears the burden to show the privilege applies. *Westbrooke*, 151 S.W.3d at 367. Additionally, Rule 81.12(a) provides that "[t]he record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented." Under subsection c of Rule 81.12, the appellant has the burden to provide the appellate court a record on appeal that is sufficient to permit it to review the appellant's claims of error. *City of Plattsburg v. Davison*, 176 S.W.3d 164, 169 (Mo. App. W.D.2005). In the absence of a sufficient record, the appellate court cannot review the appellant's claim, and the appeal must be dismissed. *Id.* (quoting *Fansher v. Dir. of Revenue*, 147 S.W.3d 873, 874 (Mo.App. W.D.2004)).

Neither Mr. Ratcliff's motion in limine nor, more importantly, the affidavit of his prior attorney is included in the record on appeal. Similarly, Mr. Ratcliff's deposition is not included in the record on appeal. While both parties have failed to provide the documents supporting their arguments in the record on appeal, Mr. Ratcliff, as the party claiming a privilege applies and as the appellant, bore the burden of providing this court with a sufficient record to review his claim of error. Because he did not, this claim is dismissed.

### D. Trial Court's Exclusion of OSHA and ANSI Regulations was Harmless Error

Mr. Ratcliff next challenges the trial court's exclusion of expert testimony and evidence concerning Sprint's failure to follow OSHA and ANSI requirements. He argues that the evidence was relevant to the applicable standard of care and Sprint's liability.

The regulations at issue concern the guarding of floor and wall openings and holes. They require that when a floor hole cover is not in place, the opening or hole shall be protected by a removable standard railing or shall be attended by someone. 29 CFR § 1910.23(a)(8)(1999); ANSI A1264.1–1995 Section 3.6. The trial court excluded the specific regulations and precluded Mr. Ratcliff's expert, Dr. Frank Gomer, from testifying as to the specific regulations or Sprint's violation of them. As discussed above in the second point addressed, negligence per se was not claimed in this case. The question, therefore, is whether the OSHA and ANSI regulations excluded by the trial court were relevant to Mr. Ratcliff's negligence claim.

■■■■■ "OSHA regulations offered as evidence of the standard of care owed by a party are competent evidence relevant to the question of negligence." *Giddens v. Kansas City S. Ry. Co.*, 29 S.W.3d 813, 821 (Mo. banc 2000). Such "regulations promulgated pursuant to federal statutes may be judicially noticed and considered as evidence." *Id.* Rules and regulations of this type may be entered into evidence and a violation of the substance of the pertinent rule "may be hypothesized as evidence supporting a jury finding of negligence." *Id.*

■■■■■ While the specific OSHA and ANSI regulations were relevant to assessing whether Sprint complied with the standard of care in this negligence case, any error in their exclusion was harmless.

"[E]rror in the exclusion of evidence is harmless if the same facts have been shown by other evidence and exhibits." *King v. Copp Trucking, Inc.*, 853 S.W.2d 304, 307 (Mo.App. W.D.1993). Although not allowed to cite the specific regulations, Dr. Gomer did testify that OSHA regulations and ANSI standards exist concerning guarding floor openings and that he reviewed and considered those standards in investigating this case and forming his opinion. He explained that the engineering safety standards require that a floor opening be either guarded with a railing system around the hole to create a safety barrier or constantly attended by someone. Dr. Gomer then opined that Sprint failed to follow the proper safety requirements for guarding floor openings in this case and that this failure caused Mr. Ratcliff's accident. Admission of the specific regulations and testimony concerning them would have been cumulative to this evidence offered through Dr. Gomer's testimony. Thus, while the specific regulations may have been relevant to the applicable standard of care, any error in their exclusion was harmless, and Mr. Ratcliff suffered no prejudice.[3] The point is denied.

**E. Issue Regarding Exclusion of Impeachment Evidence of Sprint's Expert Witness Not Preserved For Review**

■■■ In his next point on appeal, Mr. Ratcliff claims that the trial court erred in sustaining Sprint's objection to and exclud-

---

**3.** *See, e.g. Gagnon v. Dresser Indus. Corp.*, 130 Mich.App. 452, 344 N.W.2d 582, 587 (1983) (exclusion of evidence of OSHA safety regulations was harmless where jury was informed of similar ANSI standard, which contained applicable standard of care, and expert was permitted to testify that conduct violated the excluded regulations), *overruled on other grounds by Salter v. Patton*, 261 Mich.App. 559, 682 N.W.2d 537 (2004). *Compare Le-*

*Page v. Walsh Constr. Co.*, 126 Ill.App.3d 1075, 82 Ill.Dec. 247, 468 N.E.2d 509, 511 (Ill.Ct.App.1984) (exclusion of OSHA regulation was prejudicial even though identical ANSI regulation, which was a user-created standard, was introduced because "it would be 'of substantial relevance' in evaluating the standard to know that its source was a government agency.")

ing impeachment evidence of Sprint's expert witness, Dr. Wayne Stillings. He asserts that evidence that Dr. Stillings "had committed past false statements under oath, violations of court orders, and had prior disqualifications to serve as an expert witness" went to witness credibility and, thus, was admissible.

In his brief, Mr. Ratcliff fails to elaborate on what specific evidence he sought to introduce to impeach Dr. Stillings. Review of the record reveals that prior to trial, Mr. Ratcliff filed a motion to strike Dr. Stillings as an expert in the case for several reasons. Mr. Ratcliff claimed, in part, that "Dr. Stillings has a history of failing to follow court orders and has been disqualified as an expert on at least two occasions for his malfeasance." Mr. Ratcliff then recited a litany of alleged examples of Dr. Stillings failing to follow court orders in other cases in which he was an expert and in his own divorce case. Thereafter, Sprint filed a motion in limine seeking to preclude Mr. Ratcliff from questioning Dr. Stillings about these matters. In arguing the motion in limine, Mr. Ratcliff asserted that the evidence, which again Mr. Ratcliff did not specifically identify, went directly to Dr. Stillings' credibility. The trial court sustained Sprint's motion in limine. Mr. Ratcliff never sought to introduce the evidence at trial or make an offer of proof.

 The trial court's ruling on a motion in limine is interlocutory and subject to change during the course of trial. *Hancock v. Shook*, 100 S.W.3d 786, 802 (Mo. banc 2003). "A motion in limine, by itself, preserves nothing for appeal." *Id.* " 'The proponent of the evidence must attempt to present the excluded evidence at trial . . . .' " *Id.* (quoting *State v. Cole*, 71 S.W.3d 163, 175 (Mo. banc 2002)). If the trial court continues to exclude the evi-

dence, the proponent must then make an offer of proof. *Id.*

Mr. Ratcliff did not attempt to introduce the excluded evidence at trial during Dr. Stillings' cross-examination. Nor did he make an offer of proof. He, therefore, did not preserve the issue for appeal. *Id.* The point is denied.

### Trial Court Did Not Err in Failing to Grant Protective Order Regarding Psychological Evaluation

 Finally, Mr. Ratcliff claims that the trial court erred in failing to grant a protective order allowing for the recording of the psychological evaluation of him conducted by Sprint's expert, Dr. Wayne Stillings. Mr. Ratcliff asserts that without such recording, "the evaluation turned into a de facto deposition, with Dr. Stillings acquiring purported information for the defense that was used to assassinate [his] character."

 The trial court has broad discretion in administering the rules of discovery. *State ex rel. Ford Motor Co. v. Messina*, 71 S.W.3d 602, 607 (Mo. banc 2002). It abuses its discretion "if its order is clearly against the logic of the circumstances, is arbitrary and unreasonable, and indicates a lack of careful consideration." *Id.* "A protective order should issue if annoyance, oppression, and undue burden and expense outweigh the need for discovery." *Id.* (citing Rule 56.01(c)).

Rule 60.01 establishes the procedure for independent medical examinations when the physical or mental condition of a party is in controversy. The rule provides in pertinent part:

> In an action in which the mental condition, physical condition, or blood relationship of a party . . . is in controversy, the court in which the action is pending may order the party . . . to submit to

physical, mental, or blood examinations by physicians or other appropriate licensed health care providers.... Any order under this Rule 60.01(a) may be made only on motion for good cause shown, upon notice to the person against whom the order is sought and to all other parties. Such order shall specify the time, place, manner, conditions, scope of, and identity of each person conducting the examination or evaluation.

Rule 60.01(a)(1) and (3). In this case, after the parties scheduled Mr. Ratcliff's evaluation with Dr. Stillings, Sprint's counsel informed Mr. Ratcliff's counsel of Dr. Stilling's policy that "[n]o one else is allowed in the doctor's office during psychological testing/evaluation." Thereafter, Mr. Ratcliff filed a motion for protective order requesting that he be allowed to record the evaluation "for the purposes of being able to properly depose and cross examine Dr. Stillings." The trial court denied the motion.

Although Rule 60.01(c) allows the court to specify the manner or conditions of an independent medical examination, the rule, in itself, does not provide for recording of the examination. And the issue has not been specifically addressed in Missouri. The analysis in *Jensen v. Wallace*, 671 S.W.2d 331 (Mo.App. W.D.1984), is, however, particularly instructive here.

In *Jensen*, the plaintiff sought to have his attorney accompany him to a physical examination by the defendant's expert. *Id.* at 331–32. The trial court refused the request and dismissed the plaintiff's case when the plaintiff failed to comply with its order requiring him to be examined by the doctor out of the presence of his attorney. *Id.* at 332. The plaintiff's principal argument on appeal was that he was constitutionally entitled to the assistance of counsel at a Rule 60.01 court-ordered medical examination. *Id.* This court found that

while the court-ordered medical examination is certainly part of the discovery process, it is not a stage of the litigation that presumptively requires the presence of a party's attorney. *Id.* at 333. In so holding, this court distinguished between the nature of a Rule 60.01 medical exam and an oral discovery by opposing counsel:

"A medical examination is not an occasion when the assistance of counsel is normally necessary. This is so because of the nature of a medical examination, which is very different, for example, from an oral discovery examination by opposing counsel. It is also not ordinarily regarded as an adversary proceeding because a medical examiner is not supposed to be, and ordinarily is not, seeking to establish facts favorable to the party who engaged him to make the examination. This is the case even though the examining physician is selected and compensated by the opposing party."

*Id.* at 333–34 (quoting *Pemberton v. Bennett*, 234 Or. 285, 381 P.2d 705, 706 (1963)). This court, therefore, concluded that the trial court did not abuse its discretion in ordering the plaintiff to submit to a physical examination without the presence of counsel. *Id.* at 334.

The reasoning in *Jensen* is applicable here, where, in his motion for protective order, Mr. Ratcliff requested that he be allowed to record the evaluation "for purposes of being able to properly depose and cross examine Dr. Stillings." While less intrusive than the presence of an attorney as in *Jensen*, recording an independent medical examination for the purposes of cross-examination of the doctor is inconsistent with the underlying purpose of Rule 60.01. "The purpose of the rule providing for medical examinations in actions involving the physical [or mental] condition of a party is to eliminate uncertainty concerning the medical aspects of the cause

and to permit the preparation of an intelligent and informed defense." *State ex rel. C.S. v. Dowd,* 923 S.W.2d 444, 447 (Mo. App. E.D.1996). Mr. Ratcliff's purpose for the recording was purely adversarial. "A medical examination is not an adversary proceeding *per se.*" *Jensen,* 671 S.W.2d at 333.

Furthermore, Mr. Ratcliff suffered no disadvantage from his inability to record Dr. Stillings' evaluation. Mr. Ratcliff's expert, Dr. Samuel Bernstein, also conducted a psychological/vocational evaluation of Mr. Ratcliff, and nothing in the record indicates that Sprint was allowed have its attorney present or to record that evaluation. *See Tomlin v. Holecek,* 150 F.R.D. 628, 633 (D.Minn.1993) (plaintiff suffered no disadvantage by inability to record defendant's expert's interview where defendants were without a recording of the interviews of plaintiff that were conducted by his psychologists.) Moreover, Mr. Ratcliff was given Dr. Stillings' file and deposed him twice, and he was obviously present during his exam and could testify regarding it. The trial court did not abuse its discretion in failing to grant a protective order allowing Mr. Ratcliff to record the psychological evaluation of him conducted by Dr. Stillings. *But see Jacob v. Chaplin,* 639 N.E.2d 1010 (Ind.1994) (trial court did not abuse its discretion in permitting independent medical examination to be recorded). The point is denied.

Finally, Mr. Ratcliff's last point, an evidentiary claim regarding damages, need not be addressed because the jury determined that Sprint was 0% at fault, and no error was found on the issue of liability. The judgment of the trial court is affirmed.

All concur.